[L. A. Nos. 16969, 16970. In Bank.—July 24, 1941.]

A. P. JENSEN et al., Respondents, v. HUGH EVANS & COMPANY (a Corporation) et al., Defendants; L. H. BOOKER et al., Third Party Claimants and Appellants.

(Two Cases.)

Olson & Olson, Allen Miller, Robert Clifton and Olson & Ahlport for Appellants.

Max Lewis, A. Arnold Klein, Laurence M. Weinberg and Loeb & Loeb for Respondents.

SHENK, J.—These actions have been consolidated for hearing on appeal. In each there are two appeals by separate groups of third party claimants from a single judgment de-

termining that title to the funds in controversy rests in the plaintiffs and not in the appellants. In action number 16,970 there is also an appeal from an order striking motions for new trial.

Diversified Real Estate Investments and Diversified Real Estate Investments Trust No. 2 are unincorporated business or Massachusetts trusts. They were organized in 1928 and 1929, respectively, by the recordation of like trust agreements designating Hugh Evans, William A. Avey, and Gordon Whitnall, as trustees. The general purpose of the trusts was to engage in the real estate business, with capital procured by the sale to the public of shares of beneficial interests. Permits were obtained from the Corporation Commissioner authorizing the issuance and sale of these shares under certain conditions, one of which was that the trustees be bonded. The provision of the permits setting forth this requirement reads as follows: "That this permit shall not become effective for any purpose unless and until the trustees herein named shall give bonds *for the honest and faithful application of all funds derived from the sale of the shares herein authorized,* said bonds to be first approved by the Commissioner of Corporations. . . . "

Pursuant to this requirement each trustee furnished surety bond in the penal sum of $50,000, executed by the trustee as principal, and the Fidelity & Deposit Company of Maryland, a corporation, as surety. Each bond provided that the named trustee, as principal, and the Fidelity & Deposit Company "as surety, are held and firmly bound unto all such persons, firms or corporations *as shall hereafter become subscribers to shares of beneficial interests* . . . " in the named trust. Each bond was conditioned as follows: " . . . if the said principal . . . as such trustee, shall honestly and faithfully apply all funds derived from the sale of shares of beneficial interests in said trust, in accordance with the provisions of said declaration of trust above referred to, then this obligation shall be void, otherwise to remain in full force and effect. . . . "

Subsequently many shares in the trusts were issued and sold, and with the capital so procured, the trusts, through the trustees, carried on the business of purchasing and selling real estate in and about Los Angeles County. The business, however, was mismanaged by the trustees and through their misapplication of funds, the trust assets were wiped out and the entire investment of the shareholders was lost.

On March 3, 1932, L. H. Booker, Lillian C. Prentiss-Baker, and W. G. Hargis, as individual shareholders in Diversified Real Estate Investments, commenced an action against the trustees and managing agent of that trust for an accounting, removal of trustees, appointment of a receiver, and for a monetary judgment for dissipation of the trust estate. On the same date L. H. Booker, as an individual and as a shareholder in Diversified Real Estate Investments Trust No. 2, filed a similar action seeking relief against the same defendants as representatives of the latter trust.

When it appeared doubtful that any recovery could be effected in either action, it was decided to join the surety on the bonds of the trustees as a party defendant. Meanwhile, and on March 16, 1932, two of the original trustees, and a third trustee who had been appointed on the prior resignation of the other original trustee, all resigned, and were replaced by other appointees. One of these later appointees resigned in June, 1932, and the other two in February, 1934. In March, 1934, for the alleged purpose of more conveniently prosecuting the above mentioned actions against the bonding company, the three plaintiffs, Booker, Prentiss-Baker, and Hargis, were appointed as trustees of the two trust estates. By order of court they were substituted as party plaintiffs in their added capacity and were permitted to file a fourth amended complaint in each action, joining the bonding company as a party defendant. In other words, with respect to the capacity of the plaintiffs, the fourth amended complaints alleged as follows:

"Plaintiffs herein, L. H. Booker, Lillian C. Prentiss-Baker and W. G. Hargis, are the owners and holders of beneficial interest in said trust. On the first day of March, 1934, said plaintiffs were duly appointed by this Court as trustees of said trust, and in that capacity, having accepted said trust, plaintiffs file this, their fourth amended complaint herein, on behalf of said trust estate and of all purchasers or owners of beneficial interest therein."

In determining a question of proper parties raised by demurrer, the trial court expressed the view that it was permissible for the trustees to bring the actions on the bonds, rather than to require that a separate action be prosecuted by each individual beneficiary of the trust. Authority for the trustees to so act was found in a provision of the trust indenture (sec.

10, subd. e), empowering them to "Represent the *beneficiaries* in all suits or legal or other proceedings affecting the trust estate, or any right or duty of trustees, *or any beneficiary hereunder* in any court of law or equity or elsewhere. . . . "

The fourth amended complaints charged that during the periods the bonds were in full force and effect the original trustees failed to faithfully perform the duties of their office in accordance with the provisions of the declaration of trust, that they misappropriated funds derived from the sale of shares, thereby defrauding the trust estates and the beneficiaries, and that by concealment and false and fraudulent representations they prevented discovery of their wrongful acts until after March 1, 1932. Issue was joined by the filing of an answer by the bonding company to each of the complaints.

Thereafter, as between plaintiffs and the defendant bonding company, the actions were compromised for the sum of $50,000. On February 26, 1938, pursuant to stipulation, there was entered in each action a judgment in the sum of $25,000 in favor of the plaintiffs and against the company, and on the same day the judgments were satisfied. After deduction of costs and legal fees the balance of the recovery obtained by plaintiffs through the settlement, $25,000, was deposited by them in two separate bank accounts of $12,500 each, with the Citizens National Trust & Savings Bank of Los Angeles, one account being designated as "Diversified Real Estate Investments, Special Account No. 93996," and the other as "Diversified Real Estate Investments Trust No. 2, Special Account No. 93997."

These two funds of $12,500 each are the subject of the present third party claim proceedings in the action of *Jensen v. Hugh Evans & Co., et al.* The third party claims represent an effort of the shareholder-trustees, Booker, Prentiss-Baker, and Hargis, and of other shareholders, acting on behalf of all of that class, to retain the funds for their benefit as against seizure under a writ of execution procured by A. P. and Lillie P. Jensen as judgment creditors of the trusts.

The Jensens had subscribed for and become registered owners of shares in Diversified Real Estate Investments Trust No. 2, and had also subscribed for shares in Diversified Real Estate Investments, but had never received certificates of beneficial interest in the latter trust. On March 22, 1932, which was about two weeks after commencement of the Booker

actions, they filed suit against the three original trustees, the managing agent, the two trusts, and the bonding company, seeking the rescission of agreements to subscribe for shares in the trust on the ground said shares were void and worthless, and also damages for deceit and for violation of the Corporate Securities Act in the sale and exchange of stock. Recovery was had on the latter ground, and on September 11, 1935, judgment was entered against the two trusts for the sums of $12,292.77 and $17,057.23, respectively, and against all of the other defendants except the bonding company. As against that company the cause was dismissed. The judgments were not paid because the trust estates were insolvent and all assets had been dissipated.

Three years later, however, on May 20, 1938, after the two funds of $12,500 recovered in the Booker actions had been deposited to the credit of the trusts in special bank accounts, the Jensens sought to satisfy their judgment from those funds. Under their direction, pursuant to an alias writ of execution, the sheriff of Los Angeles County levied upon the funds, and on May 27, 1938, secured them from the bank and deposited them with the county treasurer. The latter officer, as custodian for the sheriff, has been in possession of the sums ever since that date.

On May 26, 1938, Booker, Prentiss-Baker, and Hargis, in their capacity as trustees of the two trusts "holding for the use and benefit of the subscribers to shares of beneficial interests" therein, filed verified third party claims with the sheriff claiming the two funds on behalf of the subscribers. This they did on the theory that in suing and recovering the judgments against the bonding company they acted as trustees for the individual certificate holders of beneficial interests, and therefore the sums recovered were held for the benefit of the individual certificate holders and not for the trust estates. The Jensens petitioned the court, under section 689 of the Code of Civil Procedure, for a hearing to determine title to the funds.

After a hearing the trial court adjudged that the Jensens were entitled to the sums in possession of the sheriff, and a judgment was entered in their favor. On the same day a warrant was drawn on the treasurer by the county auditor for $24,859, being the balance of the amount in litigation after deduction of expenses. Later in the day a stay of execution

was ordered by the court and served upon the sheriff and treasurer, by reason of which the latter officer refused to pay the warrant. The third party claimants, Booker, et al., as trustees, appealed from the judgment and also from an order subsequently made striking their motions for new trial.

Meanwhile, on July 6, 1938, while prior motions and proceedings were still pending, two new third party claims were filed with the sheriff by an agent representing groups of subscribers to shares in each trust. This second set of claims was filed upon the theory that the trial court's ruling on the first set might have been based upon a misconception as to the capacity of the claimants Booker, et al., in acting as trustees of the trusts on behalf of the individual certificate holders. The Jensens again petitioned for a hearing to determine title and the court again adjudged that they were entitled to the funds. The third party claimants appealed from this judgment.

The appeals consolidated for hearing are as follows: In case No. 16,970, two appeals by the third party claimants Booker, et al., from the judgment in favor of the Jensens, one by said claimants in their capacity as trustees of Diversified Real Estate Investments, holding for the use and benefit of subscribers to shares of beneficial interests in said trust, and the other in their like capacity as trustees of Diversified Real Estate Investments Trust No. 2; and an appeal by said claimants from the order striking their motions for new trial; in case No. 16,969, two appeals by the second set of third party claimants from the judgment in favor of the Jensens, one on behalf of all subscribers of beneficial interests in Diversified Real Estate Investments, and the other in behalf of all the subscribers for shares of beneficial interests in Diversified Real Estate Investments Trust No. 2. The claimants also gave notice of appeal from an order requiring them to post a bond, but that appeal has not been prosecuted.

The appeal from the order striking appellants' motions for new trial may be disposed of by the statement that as a new trial is not authorized in proceedings under section 689 of the Code of Civil Procedure, the motions were properly stricken. (*Wilson* v. *Dunbar*, 36 Cal. App. (2d) 144 [97 Pac. (2d) 262].) The appeals from the judgments in favor of the Jensens present questions which are more complex.

The vital issue is whether the proceeds of the judgments recovered by the trustees against the bonding company

belong to the trust estates or to the individual certificate holders. If ownership is in the trust estates, against which the Jensen judgments run, then the third party claimants cannot prevail. If, on the other hand, the funds belong to the individual certificate holders, their representatives have properly chosen a third party claim proceeding as a means of protecting their right of ownership.

It is at once apparent that the proceeds of the bonds should inure to those who were specifically indemnified by the terms thereof. This may be accomplished, not only by the application of the plain and unambiguous terms of the bonding agreements, but also by a proper consideration of the form, purpose and effect of the action brought for recovery thereon. The obligation of the bonds ran, not to the trust estates, but to all who should "hereafter become subscribers to shares of beneficial interests" in the trusts. It was on behalf of such subscribers, and as members of that class, that Booker, Prentiss-Baker, and Hargis, acting in their representative capacity, originally undertook the prosecution of the actions against the bonding company. The only liability of the bonding company was that predicated upon a breach of the condition of the bonds, i. e., a misapplication by the original trustees of funds derived from the sale of shares, and that liability was to the subscribers, and not to the trust estates.

If Booker, Prentiss-Baker, and Hargis, acting in the capacity of agents or trustees for the subscribers only, had pressed the litigation against the bonding company to final termination, the proceeds of the judgments recovered against the company would have been immune to seizure by judgment creditors of the trust estates. What then was the effect on the status of the funds and the rights of the litigants, of the appointment by order of court of Booker, Prentiss-Baker, and Hargis as trustees of the trust estates, and of the new allegations included in the fourth amended complaint setting forth the added capacity of said trustees as representatives of the trust estates as well as of the subscribers?

It is clear that the effect of the amended allegations was not to change the cause of action, a cause of action based on the bonds, brought on behalf of the obligees thereunder. The most that can be said is that under the new allegations Booker, Prentiss-Baker, and Hargis undertook the prosecution of the suits against the bonding company in a dual instead of a

single representative capacity. As trustees of the trusts they sued to secure whatever recovery they could on the bonds, both on behalf of the trust estates and of the subscribers. While it is argued that adverse interests precluded them, as trustees of the trusts, from representing both the subscribers and the trust estates, the contention is answered by the terms of the permit authorizing the issuance of shares, the terms of the bonds, and of the declaration of trust. The permit required that the trustees be bonded against the misapplication of funds derived from the sale of shares, the obligation of the bonds was to the shareholders, and the declaration of trust specifically empowered the trustees to represent the beneficiaries (shareholders) ''in all suits or legal or other proceedings affecting the trust estate, or any right or duty of trustees, or any beneficiary. . . . '' It was thus the duty of the trustees to represent the shareholders in the enforcement of their rights, as well as the trust estates.

This representation of the shareholders by the trustees was not adverse to the interest of the trust estates because the estates had no claim under the bonds. Had the trust estates alone, through the trustees, sued on the bonds, they could have asserted no cause of action and sustained no recovery against the bonding company. The main thing accomplished by including them, represented by the trustees, as parties plaintiff, was the protection of the bonding company against any future claim upon the bonds which might be urged by others purporting to act on behalf of the trust estates. There was in reality no conflict of interests, rights, or duties of the trustees in their dual representation of the estates and the shareholders. The character of the action on the bonds was entirely different from that of the ordinary suit brought in the course of business to realize upon an obligation in favor of the trusts. In the latter type of action, under usual circumstances, an effort of the trustees to seek recovery for the subscribers would be adverse to the interest of the trust estates. The action on the bonds, however, was a derivative one and the damages sought were peculiar to the shareholders, that is, damages for misapplication of such part of the trust funds as had been ''derived from the sale of shares.''

It is evident from the facts that the terms of the bonds expressed the true intent of the Corporation Commissioner and

of the parties that the obligation of the instruments should run to the benefit of the shareholders to protect them against misappropriation of the sums which they had invested. If the bonds had been intended to run in favor of the trust estates, and had so provided, the defaulting trustees, who were the principals thereunder, would have been the very persons authorized by the declaration of trust to bring an action on the bonds against themselves as principals, and the bonding company as surety, to recover on behalf of the trusts for their own defalcations. The requirement for the bonding of the trustees was intended to guard against and not to encourage the creation of any such anomalous situation. The bonds were intended to and did provide for an obligation which flowed directly to those whose interests were sought to be protected, rather than indirectly to such obligees through trustees, the trust estates, or some other intermediate channel.

■ Respondents, the Jensens, were not entitled to the benefit of the bonds. They could not have recovered directly from the bonding company upon the cause of action upon which their judgment against the trusts was based. That judgment was not predicated upon a misapplication by the trustees of funds derived from the sale of shares, but was a money judgment in lieu of the return of property in an action for rescission, based upon the illegality of respondents' contract for the purchase of shares arising from the failure of the sales agent to display a permit at the time of purchase. In fact, in their fourth amended complaint, respondents joined the bonding company as a party defendant, but later dismissed the action against it. It is significant that the bonds were conditioned upon the honest application by the trustees of only those funds of the trust estates derived from the sale of shares. Such funds would not normally comprise all of the assets of the estates, which could include surplus profits, income, interest, or other items. Under the circumstances it would be manifestly unjust for respondents, as judgment creditors of the insolvent business, to prevail over the individual shareholders in claiming the entire fund recovered on behalf of the latter class upon bonds executed solely for their benefit and protection.

■ Respondents rely upon the following factors to support their contention that the funds belong to and are held by

the trustees for the trust estates and not the shareholders: Each amended pleading in the actions against the bonding company charged damage and loss to the "trust estate"; the stipulation for recovery against the bonding company provided for entry of judgments "in favor of the plaintiffs"; the moneys paid by the company were paid, not in discharge of the bonds, but in satisfaction of the judgments; the checks given in settlement were made payable to the trustees; and the funds were deposited by them in special accounts to the credit of the trusts.

Many of the arguments advanced by respondents have already been answered by the foregoing discussion. Booker, Prentiss-Baker, and Hargis, as trustees of the trust estates, were representing both the estates and the shareholders. It is immaterial that in the wording of the pleadings, stipulation, judgment, and other documents in the action no distinction was noted between the two capacities. Damage or loss to the trust estates by misapplication of funds was a condition precedent to recovery by the shareholders. When that recovery was effected and judgments were entered for the plaintiffs, those were judgments in their favor in their dual capacity, and the defendants were unconcerned in the ultimate division or disposition made of the proceeds. In the same dual capacity the plaintiff trustees received the proceeds of the judgments and deposited them in special accounts in the bank. ▪ The title given to the special accounts did not determine the question of ownership of the funds; it was significant only as it might have given rise to a disputable presumption, had the facts remained undisclosed.

▪ When, prior to distribution of the funds, respondents as judgment creditors of the trust estates, levied upon and attempted to seize the moneys as assets of the estates, the trustees of the trusts were required for the first time to assert upon whose behalf they held the funds. They immediately claimed the funds for the benefit of the shareholders. In the execution proceedings, their position as third party claimants, trustees of the trusts acting on behalf of the shareholders, was antagonistic to their position as judgment debtors, trustees of the trust acting on behalf of the trust estates. Acting in the first capacity, they were true third party claimants and not, as contended by respondents, merely the parties defendant to the actions; that is, they were

third parties in principal and fact, representing interests and rights in such capacity different and separate from those which they represented on behalf of the trust estates, or judgment debtors.

The decision of the trustees that the funds belonged to and were held by them for the benefit of the shareholders was a correct one. While the recovery was effected by them acting in their dual capacity, and nominally legal title stood in their name in such capacity, the trust estates actually had no interest in or right to the funds. The equitable title and ownership rested wholly in the shareholders, and had the trustees not acted to protect the interest of those beneficiaries, they would have been entitled to follow the funds and assert their right by the filing of claims in their own behalf or by maintaining an independent action in equity.

Respondents, as judgment creditors, could acquire no greater right in the property levied upon than their judgment debtors, the trust estates, possessed at the time of the levy. As the trust estates at that time possessed no right whatsoever in the property, respondents acquired none. The trial court erred in ruling to the contrary. Title to the property should have been adjudged to be in the third party claimants, Booker, et al., as trustees of the trusts holding for the use and benefit of the shareholders.

Respondents contend that the actions brought against the bonding company were of the same class as actions brought by stockholders of a corporation to redress wrongs done to the corporation, and they rely upon authorities holding that in such cases the injury is to the shareholders collectively and not individually, and the suit is one for the benefit of the corporation. (*Whitten* v. *Dabney,* 171 Cal. 621 [154 Pac. 312] ; *Anderson* v. *Derrick,* 220 Cal. 770 [32 Pac. (2d) 1078] ; *Nighbert* v. *First National Bank of Bakersfield,* 26 Cal. App. (2d) 264 [79 Pac. (2d) 1105].) The situation presented by the present case is not analogous to those of the cited cases. There the actions were brought on behalf of a corporation to redress injuries done it. Here the trustees, acting for the shareholders of a Massachusetts business trust, brought suit on bonds given for the express protection of funds invested by the shareholders, and not for the protection of the trustees, or the trust estates, or their creditors.

The appeals from the orders relating to the motions for a new trial and from all other orders are dismissed.

The judgments are reversed.

Curtis, J., Carter, J., Traynor, J., and Pullen, J., *pro tem.*, concurred.

Gibson, C. J., did not participate herein.

Respondents' petition for a rehearing was denied August 21, 1941. Gibson, C. J., did not participate therein.