[Civ. No. 9910.   Third Dist.   Nov. 4, 1960.]

BERYL M. CANNON RICE, as Administratrix, etc., Respondent, v. JACK K. RANSOM, as Administrator, etc., Appellant.

Robert R. Elledge for Appellant.

James P. Mower for Respondent.

WARNE, J. pro tem.*—This is an appeal by Jack K. Ransom, as administrator of the estate of Charles A. Williams, deceased, from a judgment in favor of Beryl M. Cannon, as administratrix of the estate of Alice Williams, deceased, quieting title to two bank accounts.

Alice V. Williams and Charles A. Williams were married in 1927. In September 1953, both were involved in an automobile accident. Alice was killed instantly. Charles died two days later. Among the assets were two bank accounts, one savings account and one commercial account, both of which stood in the name of Alice V. Williams. Both accounts were originally opened in 1944 in Alice's name. In 1947, the savings account was changed to a joint tenancy account in the names of Alice and Charles. In 1953, Charles withdrew the balance from the savings account ($5,289.29) and redeposited that sum in a savings account in Alice's name alone. The account remained in her name thereafter. The commercial account became a joint tenancy account in 1948. On February 13, 1953, this account was closed, presumably by Charles, and the balance was deposited in a new account in Alice's name alone. There was evidence in the record that in 1944 Alice sold a ranch for $8,000. The deed recited that the property was Alice's separate property, and Charles, who joined therein, declared that he had no title to the land being conveyed but joined for the purpose of abandoning a declaration of homestead made by Alice. There was also received in evidence a

---

*Assigned by Chairman of Judicial Council.

transcript of the testimony of one W. S. Wiggins, given at a hearing in the estate of Alice V. Williams, deceased. The transcript shows that Wiggins had known Mr. and Mrs. Williams quite well for seven years; that he and they were the best of friends and that Charles discussed his financial affairs with him many times; that Charles told him about having transferred a bank account from a joint tenancy status to a bank account in the name of his wife alone; that Charles told him the money that was involved was Alice's; that ''The money that was involved in the property that they owned was hers.''

The trial court, among other facts, found that the money on deposit in the two bank accounts at the date of Alice's death was, and for some time prior thereto had been, the sole, separate and exclusive property of Alice. The evidence supports the finding.

Appellant first contends that the court erred in admitting evidence as to the source and character of the funds prior to the deposit in the joint tenancy bank account. Preliminarily appellant inferentially contends that there was a stipulation that the account was a true joint tenancy. Such is not the state of the record. A reading of the entire colloquy between the court and counsel shows that no stipulation was entered into. The court said at the conclusion: ''Well, I am not asking anybody to stipulate to anything. . . . I will take the evidence.'' There was no error in admitting evidence as to the source and character of the funds which were deposited in the joint accounts.

From the testimony of Wiggins it is quite clear that Charles considered the money in the joint bank accounts was, and intended that it should be, Alice's separate property. And the inference is that when Charles stated to Wiggins that the ''money that was involved in the property they owned was hers,'' he was referring to the ranch property which was sold. These statements were declarations against interest and rebut the inference of a true joint tenancy. In *Paterson* v. *Comastri,* 39 Cal.2d 66 [244 P.2d 902], the court rejected a similar contention to that made in this case and held that the statutory presumption of interest arising from the form of joint accounts is rebuttable by competent evidence showing the true character and ownership of the moneys on deposit.　At page 71 the court said:

''. . . The . . . presumption, that in the absence of fraud or undue influence, it was the intention of the depositors to

vest title in the survivor, is conclusive. In order that the conclusive presumption may be applicable, however, there must be survivorship, *and even then it applies only in favor of the survivor to monies still remaining in the account at the time of death."* (Emphasis added.)

In the instant case we find Charles withdrawing the balance from the joint savings account and redepositing it in a savings account in Alice's name alone, and also Charles presumably closing the joint commercial account and depositing the balance in a new account in Alice's name only. There were no moneys remaining in either joint account at the time of Alice's death. Charles could be held to have severed the joint tenancy relationship and his right of survivorship.

When money is paid to or deposited in the bank account of another it is presumed to be due to and belong to the latter. (Code Civ. Proc., § 1963, subds. 7 and 8.) A person is presumed to own things possessed by him, and to be the owner of property from exercising acts of ownership over it. (Subds. 11 and 12 of the same section.) When the money was deposited to the account of Alice by Charles, in the ordinary course of business, it presumably was her property no matter what its source. (*De Hart* v. *Allen,* 43 Cal.App.2d 479 [111 P.2d 343]; *Baskett* v. *Crook,* 86 Cal.App.2d 355 [195 P.2d 39].)

In *Fleishman* v. *Blechman,* 148 Cal.App.2d 88, 100 [306 P.2d 548], the court said:

". . . [W]here the evidence shows without conflict that a husband has voluntarily caused funds to be put into an account standing in the name of the wife there is a presumption that he intends such funds to be the separate property of the wife."

Here Charles not only voluntarily caused the funds to be put into separate accounts in the name of Alice alone, but he declared his reasons for so doing. His actions, coupled with his statements that the moneys belonged to Alice, showed an intent on his part to relinquish his claims and to make a gift to Alice of any right in the bank accounts which he may have acquired by reason of the joint tenancy. And even if there were no evidence of his reasons for making the transfer, the presumption would be that he intended the transfer to be a gift.

". . . If a husband transfers his separate or community property to his wife, the mere fact of a transfer raises the prima facie presumption that he intended the transfer to be a

gift.'' (*Estate of Horn,* 102 Cal.App.2d 635, 641 [228 P.2d 99].)

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.