[Civ. No. 26133. First Dist., Div. One. Mar. 13, 1970.]

EARL WILLIAM ROBERTS, as Special Administrator, etc.,
Plaintiff and Respondent, v.
WILLIAM GOETZ, Defendant and Appellant.

## COUNSEL

J. Elwood Andresen for Defendant and Appellant.

Murphy, Murphy & Black, Frank Murphy, Jr., and George A. Strong for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—The only question presented on this appeal is whether substantial evidence supports the trial court's findings concerning title to certain real and personal property. For a statement of the substantial evidence rule, see *Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805].

William Goetz and Mabel Goetz commenced living together in 1928. At the time their total assets were substantially less than $500. They were married in 1952. During the period 1928-1964, the couple accumulated real and personal property valued in excess of $400,000, most of which was held in joint tenancy. Mabel died November 25, 1964. Her son by a prior marriage, Earl William Roberts, was thereafter appointed special administrator of her estate. Roberts, as such administrator, commenced the action in which this appeal was taken against William Goetz. By the action Roberts, as special administrator, sought to determine title to two parcels of real property and three savings and loan association accounts.

*The Savings and Loan Accounts.*

The trial court found each of the three savings and loan accounts to be the separate property of Mabel.

William Goetz testified that he gave Mabel gifts of sums of money. Although the size of these gifts does not appear, in light of the value of the estate acquired by the parties it is not unreasonable to infer that they were substantial. Mabel worked for a short time after they started living together. She received social security payments after she became eligible, and she collected rental on the hereinafter mentioned San Jose property. She made all of the deposits in each of the accounts, and she was the only person permitted to make withdrawals. William at no time appears to have exercised control over any of the accounts.

The first account at issue is numbered 6482 ($8,987.32). This account had its origin in an account numbered 1057 which was opened by Mabel in 1944, before the marriage of the parties, in the names of "Goetz, Mabel or William." Although both parties signed the signature card of the earlier account as indicated, only Mabel was permitted to make withdrawals.

And as stated, all deposits including the opening amount of $3,161.32 were made by Mabel.

After the marriage of the parties account 1057 was closed out, and the balance, $3,510.79, was immediately deposited in account 6482. Account 6482 was opened in the name "Goetz, Mabel, Trustee for William Goetz." Here again only Mabel was permitted to withdraw. William testified that he "established this account for [Mabel]" and that he gave the initial deposit "to her for herself." As before, all deposits were made by Mabel, who personally retained possession of the passbook. In 1964 Mabel executed a power of attorney to her son, respondent Earl William Roberts, authorizing him, among other things, to withdraw account 6482. She also delivered to him the passbook for that account. At about the same time she executed her last will and testament, leaving her entire estate to her son.

The title of the account "Goetz, Mabel, Trustee for William Goetz" did not determine the question of ownership of the funds; it was significant only as it might have given rise to a disputable presumption, had the facts been undisclosed. (*Jensen* v. *Hugh Evans & Co.*, 18 Cal.2d 290, 300 [115 P.2d 471].) Parol evidence remains admissible to show the intention of the parties and the " 'realities of ownership' " of such an account. (*Paterson* v. *Comastri*, 39 Cal.2d 66, 72 [244 P.2d 902]; *Estate of Brasz*, 200 Cal.App.2d 691, 697 [19 Cal.Rptr. 609]; *American Trust Co.* v. *Fitzmaurice*, 131 Cal.App.2d 382, 387 [280 P.2d 545].)

Since William testified that he established the account for Mabel and gave the opening deposit of $3,510.79 "to her for herself," it will be presumed the account was hers, regardless of its source. "[W]here the evidence shows without conflict that a husband has voluntarily caused funds to be put into an account standing in the name of the wife there is a presumption that he intends such funds to be the separate property of the wife." (*Fleishman* v. *Blechman*, 148 Cal.App.2d 88, 100 [306 P.2d 548]; see also *Rice* v. *Ransom*, 186 Cal.App.2d 191, 193 [8 Cal.Rptr. 840].)

Furthermore, the doctrine of "tentative trusts" created by deposits "in trust" for some person other than the depositor is accepted law in California. Discussing that doctrine the court in *Brucks* v. *Home Federal Sav. & Loan Assn.*, 36 Cal.2d 845, 850 [228 P.2d 545], followed the rule holding: " 'A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary.' " (See also *Guardianship of Cuen*, 142 Cal.App.2d 258,

261 [298 P.2d 545]; *Kosloskye* v. *Cis,* 70 Cal.App.2d 174, 179-181 [160 P.2d 565].)

Concerning account number 6482 the trial court found on what we consider substantial evidence "that all deposits in said account had been made by [Mabel]; that [William] knew that [Mabel] had made a will on November 20, 1963, leaving all her property to her son Earl William Roberts and that she had later, in February, 1964, through her power of attorney to Roberts, attempted to withdraw all the funds from said account; that with knowledge of her intent and her attempt, [William] prevented the withdrawal of said funds by [Mabel]; that [William] thereupon caused his appointment as Conservator of the person and estate of [Mabel] and continued to refuse to honor her intent with respect to these funds; that with knowledge of all these circumstances defendant in his Inventory, Petition for Withdrawal and Accounting, in said Conservatorship, swore to the community nature of these and all other funds on deposit in the Eureka Federal Savings and Loan Association; that [Mabel] was aged and infirm throughout all of the time described herein and was unable to act for herself and in fact passed away on November 25, 1964; that [William] was healthy and vigorous throughout all of the time described herein; and that [William] used his personal influence and his position as Conservator to frustrate [Mabel's] desire to pass the funds in said account to her son Roberts."

Beyond any doubt these facts disclose Mabel's "unequivocal act or declaration" during her lifetime to terminate the tentative trust which may have been created in account 6482. (See *Brucks* v. *Home Federal Sav. & Loan Assn., supra,* 36 Cal.2d 845, 850.) And as said in *Brucks, supra* (p. 850), "The determinative consideration is the matter of the intent of the depositor and 'this is a question of fact for the trier of the facts.'"

We conclude that the evidence amply supports the court's finding that the parties intended account 6482 to be the separate property of Mabel.

The remaining accounts at issue, numbered 9706 ($6,646.33—opened 1957) and 17428 ($1,293.12—opened 1962) stand only in the name of Mabel. The trial court could reasonably have concluded that these accounts resulted from William's gifts to Mabel or her other personal income, and were accordingly her separate property. (See *Rice* v. *Ransom, supra,* 186 Cal.App.2d 191, 194; *Fleishman* v. *Blechman, supra,* 148 Cal.App.2d 88, 100.)

*The San Jose Real Property.*

■ This property was sold to the State of California; it is the proceeds of that sale ($10,486.40) with which the parties are concerned. The property was purchased by Mabel in 1950, before the marriage of the parties, and title was taken in her name alone. The down payment, $2,700, came from the heretofore mentioned account 1057. William at no time prior to Mabel's death in 1964 asserted any right or interest in this property. Before her death Mabel told an attorney that the property was acquired before her marriage and was her separate property.

Here also the trial court could reasonably have concluded that the first payment from account 1057, and the subsequent payments on the property, resulted from William's admitted gifts to Mabel as her separate income. This, and the other evidence we have outlined, is substantial evidence supporting the court's finding that the San Jose property was the separate property of Mabel.

We see no merit in William's argument that the property was held as community or by joint tenancy since the initial payment came from the "Goetz, Mabel or William" account. As we have pointed out, *ante,* any presumption arising from the title given an account may be rebutted by other evidence. Here there was such evidence and it was accepted by the court.

*The Boulder Creek Real Property.*

■ This property was the home of William and Mabel for many years. Although William and his attorney testified that it was held in joint tenancy, the conveyance through which the parties held title was not produced. In Mabel's earlier conservatorship proceedings William alleged in a sworn document, prepared by counsel, that "So far as can be ascertained, the [Boulder Creek property] is *community property."* (Italics added.) This is substantial evidence that the property was in fact community property as found by the court.

The judgment is affirmed.

Molinari, P.J., and Sims, J., concurred.

A petition for a rehearing was denied April 3, 1970, and appellant's petition for a hearing by the Supreme Court was denied May 6, 1970.