[No. C062060. Third Dist. Dec. 28, 2011.]

PORTICO MANAGEMENT GROUP, LLC, Plaintiff and Appellant, v. ALAN J. HARRISON et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II–VI of the Discussion.

COUNSEL

Steyer Lowenthal Boodrookas Alvarez & Smith, Jeffrey H. Lowenthal and Carlos A. Alvarez for Plaintiff and Appellant.

Hansen, Kohls, Jones, Sommer & Jacob and Daniel V. Kohls for Defendant and Respondent Alan J. Harrison.

Wilson Law Firm and Dennis M. Wilson for Defendants and Respondents Wei-Jen Harrison and Harrison Family Enterprises II.

William P. Roscoe III; Miller Law Group, Michele Ballard Miller and Joseph P. Mascovich for Defendants and Respondents Kim Harrison and Lynn Harrison.

OPINION

**DUARTE, J.**—Plaintiff Portico Management Group, LLC (Portico), entered into a contract to purchase an apartment building owned by the trustees of the Harrison Children's Trust (HCT) and Harrison Family Enterprise II (HFE II), a limited partnership. When the sale was not completed, Portico sued the

sellers for specific performance and damages. The matter went to arbitration, resulting in an arbitration award of over $1.6 million in Portico's favor. Although in its lawsuit Portico properly named as defendants Alan Harrison and Wei-Jen Harrison as trustees of the HCT, and HFE II, the arbitration award was not against the trustees, but only against the HCT and HFE II.

In 2007, a judgment confirming the arbitration award against the trust and the limited partnership was entered; the trial court declined to accept a proposed judgment against the trustees.

Portico did not seek to correct or modify either the arbitration award or the judgment to indicate the arbitration award and judgment were properly against the trustees; nor did Portico appeal from the judgment against the trust. Instead, years of protracted litigation ensued. Portico sought to enforce the judgment by levying on funds generated by the apartment building and to add as judgment debtors the successor trustees of the HCT, and Wei-Jen Harrison as trustee of the Wei-Jen Harrison Revocable Trust (WHRT), to which HFE II had transferred its share of the apartment building. In response, the successor trustees of the HCT asserted a third party claim on the levied funds.

The trial court originally ruled in favor of Portico, but later changed its mind and accepted the argument that the HCT, as a trust, was not an entity and did not hold title to any property; thus the judgment against it was unenforceable. The court also rejected the argument that Wei-Jen Harrison could be added to the judgment on an alter ego theory. The court awarded the successor trustees postarbitration attorney fees as prevailing parties under the attorney fee provision of the purchase contract.

Portico appeals. It maintains, as it has throughout the litigation, that it is proper to enter judgment against a trust and such a judgment is enforceable against the assets of the trust. Portico contends that in granting various motions, the court, without jurisdiction, was permitting a collateral attack on the final 2007 judgment. It further contends the court's judgments and orders addressing adding judgment debtors and the validity of the third party claim must be reversed due to these errors. It argues the trial court erred in denying its motion to add Wei-Jen Harrison, as trustee of the WHRT, to the judgment on an alter ego theory. Finally, Portico claims the attorney fee award to the successor trustees must be reversed.

We find merit solely in Portico's contention of error regarding adding Wei-Jen Harrison to the judgment. In ruling on the motion, the trial court apparently misconstrued the motion and therefore erred. Accordingly, we shall remand for further proceedings on that motion. In all other respects, we shall affirm.

## BACKGROUND

### I

### *The Parties and the Purchase Contract*

Alan Harrison and Wei-Jen Harrison were married in 1975; in 1987, they created the HCT for the benefit of their daughters, Kim and Lynn.[1] Alan and Wei-Jen were the general trustees of the HCT. The couple invested in several apartment complexes over the years, one of which was the 102-unit apartment complex in Carmichael known as the Continental. In 1999, Alan and Wei-Jen divorced; pursuant to a partial marital settlement agreement, the Continental was placed in the HCT. The HCT owned 87.5 percent of the Continental. The remaining 12.5 percent was owned by Wei-Jen's relatives. After the separation, Wei-Jen purchased their interest.

In 2001 or 2002, Wei-Jen organized the limited partnership HFE II, which held the 12.5 percent interest in the Continental. She planned to sell the Continental and manage the properties through HFE II. Wei-Jen, as "Trustee Asset Manager" of HCT and as general partner of HFE II, entered into a purchase agreement to sell the Continental to Portico. Alan refused to sign the deed and closing documents.

### II

### *The Arbitration Award and Judgment*

In 2003, Portico brought suit for specific performance, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation based on the failure to complete the sale of the Continental. The complaint named as defendants Alan and Wei-Jen, individually and as general trustees of the HCT, two special trustees of the HCT, HFE II, and Wei-Jen as general partner of HFE II. The complaint also sought to compel mediation and arbitration pursuant to paragraph 21 of the purchase agreement.

Portico's motion to compel arbitration was granted.

The arbitration hearing was held October 23 through October 27, 2006. In 2007, the arbitrator issued a final award. The arbitrator found for Portico on the breach of contract claim, as Alan's failure to sign the closing documents

---

[1] As all four members of the Harrison family referenced in this opinion share the same last name, we refer to these four members by their respective first names.

to permit the sale caused the sellers to breach the contract with Portico. The arbitrator found, however, that Portico had failed to carry its burden to show fraud and misrepresentation. Noting that the action was brought against Alan and Wei-Jen personally and as trustees and against Wei-Jen as general partner of HFE II, the arbitrator found "that the General Trustees are not personally liable for their acts as trustees of an irrevocable Trust. At all times, Plaintiff knew it was dealing with a trust and a partnership. Thus, the award in this case is against [HCT] and HFE II in proportion to their ownership interest in the Continental (87.5% and 12.5%)." Portico had elected the remedy of damages rather than specific performance. The arbitrator awarded Portico damages, attorney fees, and costs totaling $1,621,435.80.

Portico petitioned to confirm the arbitration award. Portico proposed a judgment that was against HFE II and Alan and Wei-Jen as general trustees of the HCT. After Alan and Wei-Jen objected to this form of judgment, the trial court directed Portico to revise the proposed judgment. In August 2007, judgment was entered against the HCT and HFE II—without reference to trustees.

### III

*The Levy and Third Party Claim of Ownership*

To enforce the judgment, Portico caused a writ of execution on the judgment to be issued. Pursuant to this writ, a notice of levy was served on FPI Management, Inc. (FPI). Portico sought to levy on all personal property of the HCT and HFE II, including rents from the Continental and all monies in the Continental Apartments operating account at Wells Fargo Bank.

FPI turned over $189,000 to the levying officer. This sum represented 87.5 percent of the monies in the Continental account that were dispersible under HUD requirements. FPI noted the owner of 12.5 percent of the Continental was not named in the levy.[2]

Meanwhile, Kim and Lynn, Alan and Wei-Jen's adult daughters and beneficiaries of the HCT, had petitioned the court for appointment as cotrustees of the HCT. In March of 2007, after the arbitration but before the award issued, Kim and Lynn were approved and appointed interim successor cotrustees of the HCT.

---

[2] As set forth *post* in the unpublished portion of the opinion, HFE II transferred its 12.5 percent interest in the Continental to Wei-Jen (as trustee of the WHRT) by grant deed in 2004.

Kim and Lynn filed a third party claim of ownership, pursuant to Code of Civil Procedure[3] section 720.110 et seq., on the property described in the notice of levy served on FPI and Wells Fargo Bank. They argued that no judgment had been entered against their predecessors, Alan and Wei-Jen, as trustees of the HCT. Instead, the judgment was entered against the HCT, which was not an entity or person capable of owning title to property.

Portico applied for a temporary restraining order enjoining transfer of the levied funds and an order setting a hearing to determine the validity of the third party claim. The court issued a temporary restraining order, which did permit FPI to make mortgage payments, and pay taxes and other ordinary operating expenses.

## IV

*Motions to Add Judgment Debtors*

Portico moved to add Kim and Lynn, as successor trustees, as judgment debtors. Portico argued Kim and Lynn's claim that a judgment cannot be entered against a trust failed under well-settled law. Nonetheless, if the court concluded Portico could not enforce the judgment against the successor trustees without adding them as judgment debtors, Portico asserted the court had power under section 187 to do so. Portico also sought to add Wei-Jen, as trustee of the WHRT, and the WHRT itself as judgment debtors. Portico asserted that despite the lis pendens it had filed on the Continental in 2003, Wei-Jen purported to transfer HFE II's 12.5 percent interest in the Continental to Wei-Jen as trustee of the WHRT. As a result of this purported transfer, FPI refused to deposit with the sheriff 12.5 percent of the funds it held, on the grounds that such funds did not belong to HFE II. Portico argued the purported transfer was "an obvious effort to frustrate Portico's efforts to enforce any resulting judgment against HFE II."

In opposition, Wei-Jen argued Portico knew in 2004 that title to the Continental had been transferred. In 2004, Portico took Wei-Jen's deposition and from the questions it was apparent that Portico knew about the transfer. Nonetheless, despite this knowledge, Portico did not amend its complaint to allege the property had been transferred and to add alter ego allegations. Nor did Portico make any effort to modify or correct the arbitration award. Instead, Portico waited over three years to "amend the judgment."

---

[3] Further undesignated statutory references are to the Code of Civil Procedure.

Portico withdrew its motion to add Wei-Jen as a judgment debtor, but brought the motion again later.[4] In the second motion, Portico argued Wei-Jen and the WHRT were alter egos of HFE II. It relied on her deposition in a debtor's examination in which she conceded she, HFE II, and the WHRT were all the same entity. Portico argued there was no consideration for HFE II's transfer of its 12.5 percent interest in the Continental.

In response, Wei-Jen declared there was consideration for the transfer, as she had assumed a $100,000 note, gave up her interest in HFE II, and assumed responsibility for a claim by the listing brokers over the failed sale.

V

*Initial Rulings, Final Rulings, and Judgment*

On December 5, 2007, the trial court tentatively granted Portico's motion to add Kim and Lynn, successor trustees of the HCT, as judgment debtors. On December 28, the court ruled on the petition for an order determining the validity of the third party claim, treating it as a motion to amend the judgment. Finding that it was clear the arbitrator intended to order judgment against Alan and Wei-Jen in their capacity as *trustees* of the HCT, but not in their *individual* capacities, the court ordered the judgment amended to reflect that it was against Alan and Wei-Jen as trustees of the HCT. Since Kim and Lynn were now successor trustees of the HCT, a second amended judgment would be entered against them. The court found that Portico was entitled to enforce its judgment against the trust property.

In early January 2008, Alan made an ex parte application to stay entry of the amended judgment. He argued his due process rights were violated as there was no notice that an amendment of the judgment was being considered.

The court denied the motion to stay without prejudice, but indicated that it would not sign the amended judgment until all motions to vacate or reconsider were filed, stating that all disputes were still pending.

Alan, Wei-Jen, Kim and Lynn filed various motions to vacate, for reconsideration, and for a new trial.

On February 11, 2008, the trial court issued several tentative rulings. Again, the court ruled in favor of Portico. These rulings denied Kim and

---

[4] Portico claimed it took the first motion off calendar as a courtesy to Wei-Jen's counsel, who had filed papers late over Thanksgiving weekend.

Lynn's motion for a new trial or reconsideration, Alan's motion to vacate, and Wei-Jen's motion for a new trial or reconsideration. The last tentative ruling granted Portico's request to add Wei-Jen as a judgment debtor; the court found Wei-Jen and the WHRT were alter egos of HFE II.

In the final rulings in March, however, the court changed its mind. Alan's motion to vacate was granted. The court found the arbitrator made a mistake in naming the HCT as the judgment debtor, but the arbitrator's decision was not subject to judicial review. The court vacated its orders that amended the judgment and indicated a second amended judgment could be entered against Kim and Lynn.

Similarly, the court granted Wei-Jen's motion for a new trial or reconsideration and Kim and Lynn's motion for the same. The court found it had no authority to correct the arbitrator's error.

The court denied Portico's motion to add Wei-Jen as a judgment debtor. The court found Wei-Jen could not be added as an alter ego of the HCT.[5]

Portico's motion for clarification, correction and/or reconsideration was denied. The court found Portico failed to offer new facts, circumstances or law, and so had failed to comply with the requirements of section 1008 for a motion for reconsideration.

On April 7, 2009, the court issued two judgments. The first granted the third party claim of Kim and Lynn as to the $189,000, finding the claim was valid. The temporary restraining order was vacated and dissolved. This judgment was later amended nunc pro tunc to correct a clerical error. The second judgment denied the motion to add judgment debtors.

The court denied Portico's motion for a new trial.

Portico appealed from the two April 7 judgments.

## VI

### Attorney Fee Award

Kim and Lynn moved for attorney fees under the attorney fee provision in the purchase contract. They asserted they were prevailing parties and sought $74,125 in fees and $1,529.40 in costs.

---

[5] Portico's theory, however, was that Wei-Jen and the WHRT were alter egos of the limited partnership HFE II, *not* of the HCT.

The court granted the motion.

Portico appealed from the order awarding attorney fees, as well as from the amended judgment correcting a clerical error in one of the April 7 judgments.

## DISCUSSION

### I

*The Arbitration Award and Judgment Against the HCT*

The key dispute in this case is the effect of the judgment having been entered against the HCT, rather than against its trustees. Portico contends that under well-established law it is proper to enter judgment against a trust and since the trial court believed otherwise, its judgments and orders must be reversed. The Harrisons counter that a judgment against a trust is unenforceable because a trust is not an entity; it cannot sue or be sued, or hold title to property. The Harrisons are correct on this point. The HCT was not a proper judgment debtor.

█ In contrast to a corporation, which the law often deems a person, a trust is not a person but rather " ' "a fiduciary relationship with respect to property." [Citations.]' " (*Ziegler v. Nickel* (1998) 64 Cal.App.4th 545, 548 [75 Cal.Rptr.2d 312], italics omitted.) "Legal title to property owned by a trust is held by the trustee . . . . 'A . . . trust . . . is simply a collection of assets and liabilities.' " (*Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1343–1344 [7 Cal.Rptr.3d 178].) "[A]n ordinary express trust is not an entity separate from its trustees." (*Powers v. Ashton* (1975) 45 Cal.App.3d 783, 787 [119 Cal.Rptr. 729].)

A trust itself cannot sue or be sued. (*Presta v. Tepper* (2009) 179 Cal.App.4th 909, 914 [102 Cal.Rptr.3d 12].) "As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf. [Citations.]" (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 691 [87 Cal.Rptr.3d 122].) "A claim based on a contract entered into by a trustee in the trustee's representative capacity, . . . may be asserted against the trust *by proceeding against the trustee in the trustee's representative capacity . . . .*" (Prob. Code, § 18004, italics added.)

█ A trust does not fall within the statutory definition of a judgment debtor. A judgment debtor is "the person against whom a judgment is rendered." (§ 680.250.) A trust is not included within the definition of person. (§ 680.280.)

Since the HCT is not a separate entity, does not itself hold title to any property, and is not a judgment debtor, a judgment against the HCT is meaningless and cannot be enforced. To be enforceable against the trust property, the judgment should have been entered against those who held title to such property—the trustees.

In arguing that it is proper to enter judgment against a trust, rather than against its trustees, Portico relies on language in cases that suggest judgment was entered against a *trust itself.* In none of these cases, however, was the *issue* whether judgment could be entered against the trust, or the effect of such a judgment. The statements, therefore, are dicta, and imprecise dicta at that. For example, in *Jans v. Nelson* (2000) 83 Cal.App.4th 848, 853 [100 Cal.Rptr.2d 106], cited by Portico for the proposition that judgment may be entered for a trust, in setting forth the procedural history of the case, the court stated: "We directed entry of judgment against the trust and in favor of the bank in the full amount of the debt . . . ." We need look no further for context than to the remainder of that same sentence—"we noted that the trustee was entitled to seek contribution against other coguarantors." (*Jans v. Nelson, supra*, 83 Cal.App.4th at p. 853.) It is clear that judgment was entered against the *trustee.*[6]

Portico also quotes from *Haskett v. Villas at Desert Falls* (2001) 90 Cal.App.4th 864, 880 [108 Cal.Rptr.2d 888]: "The statute's words plainly state that the enumerated types of claims 'may be asserted against the trust . . . .' " (Italics omitted.) Portico, however, again omits the remainder of the sentence, which reads: "by proceeding against the trustee *in the trustee's representative capacity, whether or not the trustee is personally liable on the claim.*" (*Ibid.*, original italics.)

These cases show merely that many courts use a shorthand, albeit technically incorrect, description for a judgment against trustees in their representative capacity, referring simply to a judgment against a "trust." We noted this practice of referring to the trust as a party rather than referring to the trustee in *Roberts v. Lomanto* (2003) 112 Cal.App.4th 1553, 1556–1557, footnote 1 [5 Cal.Rptr.3d 866]: "In the trial court, and on appeal, Lomanto labels the parties 'the Cable Trust' and 'the Lomanto Trust.' As Roberts points out, however, a trust is not an entity distinct from its trustees and capable of legal action on its own behalf, but merely a fiduciary relationship with respect to

---

[6] To make this point clear, Alan requests this court take judicial notice of the unpublished prior decision that specifies judgment was against the trustee. Since we find it unnecessary to resort to this unpublished opinion for our analysis, we deny the request for judicial notice. (See *Ellison v. Sequoia Health Services* (2010) 183 Cal.App.4th 1486, 1500, fn. 2 [108 Cal.Rptr.3d 728].) As we have noted, merely reading the remainder of the quoted sentence is sufficient to illuminate Portico's attempts to obfuscate the holding.

property. [Citation.] We therefore refer to Roberts and Lomanto, the persons who took the actions that led to this litigation, as the parties." Selective quotation of imprecise language does not provide *authority* that a judgment entered against a trust, a nonentity that cannot hold title to property, is enforceable against trust assets. It is not.

Portico further contends *Jensen v. Hugh Evans & Co.* (1941) 18 Cal.2d 290 [115 P.2d 471] is on point. In *Jensen,* "judgment was entered against the two trusts . . . ." (*Id.* at p. 295.) Even if judgment were entered against the trusts rather than the trustees, *Jensen* is distinguishable because it involved a different type of trust, an unincorporated business or Massachusetts trust. (*Id.* at p. 292.) "In business trusts the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts, but to provide a medium for the conduct of business and sharing of its gains." (15A Cal.Jur.3d (2011) Corporations, § 566.) Unlike traditional trusts, a business trust may be treated as a separate entity. For example, business trusts are treated as corporations for tax purposes. (*Ibid.*; Rev. & Tax. Code, § 23038, subd. (b)(1).) They are treated as a person and may be judgment debtors under the bankruptcy code. (*In re Sung Soo Rim Irrevocable Intervivos Trust* (1995) 177 B.R. 673, 675.) Because business trusts are not traditional trusts, general trust law, applicable here, does not apply to them.

■ Finally, Portico relies on the Law Revision Commission comment to Probate Code section 18005. Probate Code section 18005 provides: "The question of liability as between the trust estate and the trustee personally may be determined in a proceeding under Section 17200." The Law Revision Commission comment reads in part: "It is permissible, and may be preferable, for judgment to be entered against the trust without determining the trustee's ultimate liability until later." (Cal. Law Rev. Com. com., Deering's Ann. Prob. Code (2004 ed.) foll. § 18005, p. 606.) While "[e]xplanatory comments by a law revision commission are persuasive evidence of the intent of the Legislature . . ." (*Brian W. v. Superior Court* (1978) 20 Cal.3d 618, 623 [143 Cal.Rptr. 717, 574 P.2d 788]), such comments, like all statutory interpretation, must be read in the context of the statutory framework as a whole. (See *Del Cerro Mobile Estates v. City of Placentia* (2011) 197 Cal.App.4th 173, 183 [127 Cal.Rptr.3d 413].) The immediately preceding statute, Probate Code section 18004, makes clear that a claim against a trust "may be asserted against the trust by proceeding against the trustee in the trustee's representative capacity . . . ." ■ Nothing in the Law Revision Commission comment changes the rule that a trust is not an entity and any action by or against the trust must proceed through the trustees. A judgment against trust assets must be asserted the same way, against the trustees in their representative capacity, as it is the trustees who hold title to the property held in trust.

Portico contends the arbitrator was free to ignore the technicalities of trust law and enter an award against the trust. An arbitrator has broad discretion to fashion any appropriate remedy as long as that remedy has a rational relationship to the contract. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 381 [36 Cal.Rptr.2d 581, 885 P.2d 994].) But the arbitrator's powers in fashioning a remedy are not at issue. The *legal effect* of a judgment entered against a trust, a nonentity, is at issue. A judgment against a trust, rather than against its trustees, is not enforceable. The arbitrator did not have the power to change the law.

The failure to bring suit properly against the trustees to obtain specific performance for the sale of property held in trust was not fatal in *Galdjie v. Darwish, supra,* 113 Cal.App.4th 1331. There, the named defendants were the Darwishes as individuals; the Darwishes were not named in their capacity as trustees of their revocable living trust. The property at issue was held in the trust. The court ruled in favor of the plaintiff and ordered the Darwishes to specifically perform the contract and sell the property to the plaintiff. (*Galdjie v. Darwish, supra,* 113 Cal.App.4th at p. 1336.) On appeal, the Darwishes argued the judgment could not bind the trust because the trust was not named in the complaint, nor was it specified that the Darwishes were sued in their capacity as trustees of the trust. (*Id.* at p. 1342.)

After a thorough review of the common law and statutory law, the court concluded: "From the above authorities it is clear that the proper procedure for one who wishes to ensure that trust property will be available to satisfy a judgment, whether for damages for breach of contract or for specific performance, should sue the trustee in his or her representative capacity. We do not believe, however, that this results in an ineffectual judgment due to the specific facts of the case before us. The judgment did not give respondent the right to attach property owned by appellants as individuals; it entitled him to receive a piece of real property owned by the Trust by obtaining appellants' signatures on a deed. Courts have held that where a trustee signs a contract of sale or deed without reference to his or her representative capacity, the contract or deed is enforceable against the trust. [Citations.]" (*Galdjie v. Darwish, supra,* 113 Cal.App.4th at p. 1349.)

The court noted that "a revocable inter vivos trust is a probate avoidance device, but does not prevent creditors of the settlors—who are often also the trustees and the sole beneficiaries during their lifetimes—from reaching trust property." (*Galdjie v. Darwish, supra,* 113 Cal.App.4th at p. 1349.) "The evidence before us establishes that the Trust is a revocable inter vivos trust, that appellants are the sole trustees and, that as beneficiaries, they have the power during their lifetimes to direct the sale of the real property owned by the trust. In view of the above authorities, their signatures as individuals on

the title deed as required by the judgment entered herein is sufficient to convey good title from the Trust." (*Id.* at p. 1350.)

*Galdjie* does not aid Portico. First, unlike the revocable inter vivos trust at issue in *Galdjie*, the HCT is an irrevocable trust in favor of the trustors' children, so the trust property was not the property of the trustors or, at the time of the breach of contract, the trustees. More importantly, the judgment in *Galdjie* was a proper judgment; it was against the Darwishes, persons who qualified as judgment debtors, albeit wrongly named as individuals rather than trustees. Here, in contrast, the judgment was against the HCT, a nonentity that was not a party to the lawsuit or arbitration and could not be a judgment debtor.

Faced with an arbitration award against the HCT containing such an obvious error, Portico had several possible remedies. Portico could have applied to the arbitrator to correct the award within 10 days of service of a signed copy of the award.[7] (§ 1284.) Portico had 100 days to petition the court to correct the award.[8] (§§ 1286.6, 1288.) In 2009, at the final hearing, the trial court lamented it did not have authority to send the matter back to the arbitrator. Had Portico timely taken appropriate steps, remand to the arbitrator would have been an appropriate remedy. (See *Mossman v. City of Oakdale* (2009) 170 Cal.App.4th 83, 91–92 [87 Cal.Rptr.3d 764] [where arbitration award unenforceable due to ambiguity, remand to arbitrator for clarification].) Further, Portico could have appealed from the 2007 judgment after the trial court rejected the proposed judgment naming the trustees.

This case again teaches the cautionary lesson noted in *Roehl v. Ritchie* (2007) 147 Cal.App.4th 338 [54 Cal.Rptr.3d 185]. "If anything is confirmed by the instant appeal, it is the significance of the process of confirming an arbitration award. The time to make sure that the i's are dotted, t's are crossed, and that the award decides all necessary issues in a single, final and self-contained award is *before* the award is confirmed, not *after*. That is the best way to ensure that an arbitrator's decision is truly 'the end, not the beginning, of the dispute.' [Citation.]" (*Roehl v. Ritchie, supra,* 147 Cal.App.4th at p. 341.)

---

[7] Portico observes that even if the arbitrator made an error in failing to name Alan and Wei-Jen as trustees, the two had been replaced by Kim and Lynn by the time the arbitration award was made. Portico argues it could not reopen the arbitration to prove a case against the successor trustees, particularly since the arbitrator had already denied Alan and Wei-Jen's request to reopen. Portico's arguments about the futility of requesting a correction by the arbitrator are speculative, since it never made such a request. In any event, an award against Alan and Wei-Jen as trustees would have been binding on Kim and Lynn as successor trustees. (*Moeller v. Superior Court* (1997) 16 Cal.4th 1124, 1131 [69 Cal.Rptr.2d 317, 947 P.2d 279].)

[8] One ground for correcting an arbitration award is "an evident mistake in the description of any person." (§ 1286.6, subd. (a).) We express no opinion as to whether this ground is applicable to this case.

■ "Is there a cautionary lesson? Perhaps it is this: Formalities matter, particularly when dealing with the informality of arbitration. The process of judicially confirming an arbitration award is the time when it is necessary to 'dress up' what otherwise can be a casual occasion. Be sure the arbitration award properly covers the submitted issues [and the proper parties] before wrapping it in the judicial cloak of confirmation." (*Roehl v. Ritchie, supra*, 147 Cal.App.4th at p. 355.)

■ Having accepted and confirmed the arbitration award against the HCT, without any attempt to have either the arbitrator or the court correct it to name the trustees as the proper parties,[9] Portico is bound by the terms of the arbitration award. ■ "[A]n arbitrator's decision is not generally reviewable for errors of fact or law, whether or not such error appears on the face of the award and causes substantial injustice to the parties." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 6 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*).) "In reaffirming this general rule, we recognize there is a risk that the arbitrator will make a mistake. That risk, however, is acceptable for two reasons. First, by voluntarily submitting to arbitration, the parties have agreed to bear that risk in return for a quick, inexpensive, and conclusive resolution to their dispute." (*Id.* at p. 11.) "A second reason why we tolerate the risk of an erroneous decision is because the Legislature has reduced the risk to the parties of such a decision by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." (*Moncharsh, supra*, 3 Cal.4th at p. 12.) The court noted the procedure for correcting an award under section 1286.6 (*Moncharsh, supra*, at p. 13), a procedure Portico did not attempt.

Having determined that a judgment against the trust itself is ineffective to reach assets held in trust because the judgment must be against the trustees, we turn to Portico's other arguments, which we discuss, *post*, in the unpublished portion of our opinion.

## II–VI*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[9] Although Portico initially submitted a judgment that differed from the arbitrator's award in that it included the trustees, merely submitting a judgment that reflects one party's idea of what the judgment *should* look like does not constitute moving for correction. But most importantly, Portico did not appeal the judgment that the trial court *actually* entered after rejecting Portico's first submitted version.

*See footnote, *ante*, page 464.

## DISPOSITION

The judgment denying Portico's motion to add Wei-Jen as trustee of the Wei-Jen Harrison Trust is reversed and the matter is remanded with directions to the trial court to (1) vacate the order denying the motion to amend the judgment to add Wei-Jen as trustee of the WHRT; (2) conduct further proceedings on Portico's motion to amend the judgment; and (3) make factual determinations as to whether the evidence is sufficient to show that Wei-Jen was the alter ego of HFE II and whether Wei-Jen should be added as a judgment debtor to the judgment for breach of contract. In all other respects, the April 7, 2009 judgments, as amended, and the order awarding successor trustees Kim and Lynn attorney fees are affirmed. Alan, Kim and Lynn shall recover costs from Portico; Portico and Wei-Jen shall bear their own costs. (Cal. Rules of Court, rule 8.278(a)(2) & (3).)

Raye, P. J., and Hull, J., concurred.

A petition for a rehearing was denied January 19, 2012, and appellant's petition for review by the Supreme Court was denied April 11, 2012, S199912.