Filed 1/9/14  Personalized Workout of La Jolla v. Ravet CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PERSONALIZED WORKOUT OF LA JOLLA, INC., et al.,<br><br>    Plaintiffs and Respondents<br><br>    v.<br><br>GARY RAVET, et al.,<br><br>    Defendants and Appellants. | D060244<br><br><br>(Super. Ct. No. 37-2009-00099074-CU-FR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed as modified.

Wirtz Law, Richard M. Wirtz; Law Offices of Mary A. Lehman and Mary A. Lehman for Defendants and Appellants.

Boudreau Williams and Jon R. Williams for Plaintiffs and Respondents.

This case is the latest chapter in the bitter saga between Personalized Workout of La Jolla, Inc. and Nathan Poole (together plaintiffs) on the one hand, and Gary Ravet

(Ravet) on the other. The conflict began as a dispute over membership fees to a health club. After Ravet's suit based on the health club fees disagreement proved unsuccessful, plaintiffs sued Ravet for malicious prosecution and received a judgment for money damages. Believing Ravet was hiding his assets to thwart their ability to collect that judgment, plaintiffs filed suit, under the Uniform Fraudulent Transfer Act (Civ. Code,[1] § 3439, et seq. (UFTA)), against Ravet, his parents, his two sons, his former girlfriend, and three trusts.

The fraudulent transfers involved certain real property commonly known as 1441 Cottontail Lane, La Jolla (Cottontail), which Ravet and his parents purchased. After they purchased the property, they immediately transferred it to the Gary K. Ravet Children's Trust[2] (Children's Trust), and then Ravet, as trustee of the Children's Trust, placed successive liens on Cottontail. In addition, plaintiffs made two additional claims under the UFTA involving the transfer of Ravet's ownership interest in Degalopa LLC (Degalopa).

The case proceeded to a jury trial where the jury agreed with plaintiffs and awarded them compensatory and punitive damages against several of the defendants. The court ultimately entered judgment based on the jury's verdict, confirming the jury's award of compensatory and punitive damages against Shirley Ravet (Ravet's mother), the estate of Emanuel Ravet (Ravet's father), Dorota Pearson (Ravet's former girlfriend), and

---

[1] Statutory references are to the Civil Code unless otherwise specified.

[2] The proper name of the trust contains an apostrophe in Children's. Although the apostrophe is omitted in material in the record, we use the correct name in this opinion.

2

the Children's Trust. Although the jury found Ravet liable for the compensatory damages awarded, the judgment did not include compensatory damages as to Ravet, but it did provide for punitive damages against him. Ravet,[3] Shirley, and Pearson timely appealed.[4]

Ravet individually, as well as in his capacity as trustee of the Children's Trust and trustee of the Separate Property Trust, contends the judgment must be reversed because the Children's Trust cannot be sued or be liable for a fraudulent conveyance as a matter of law, and therefore, its presence as a defendant "poisoned" the rest of the trial. He also asserts the trial court improperly instructed the jury to allow it to find Ravet liable as the transferee of his own debt. In addition, Ravet maintains the trial court committed prejudicial error by failing to admit evidence that plaintiffs' dispute with Ravet began over an $867 claim. Finally, he insists that the punitive damages awarded against him were excessive and the judgment should be reversed because of jury misconduct.

We agree with Ravet that a judgment against a trust is unenforceable. (*Portico Management Group, LLC v. Harrison* (2011) 202 Cal.App.4th 464, 473 (*Portico*).) However, Ravet concedes and the record reflects that the Children's Trust only acted

---

[3]    Ravet appeals on behalf of himself individually as well as in his capacity as trustee of the Children's Trust and the Gary K. Ravet Separate Property Trust (the Separate Property Trust).

[4]    During the course of this appeal, Shirley Ravet passed away. Barry C. Fitzpatrick, trustee of the Northern Trustee Company and trustee of the Northern Trust Company of Delaware became the substitute appellants for Shirley. These substitute appellants as well as Pearson stipulated with plaintiffs to dismiss their appeals. As such, we dismissed their appeals on October 16, 2013. Ravet, individually and as trustee of the two trusts, remains the only appellant.

through its trustee, Ravet. Therefore, the evidence plaintiffs offered at trial to show wrongdoing by the trust is the very same that showed Ravet, as trustee, was engaging in improper conduct. We thus modify the judgment to award damages against Ravet in his capacity as trustee of the Children's Trust instead of leaving the judgment unenforceable against the Children's Trust.

We reject Ravet's remaining contentions and affirm the judgment as modified.

FACTUAL AND PROCEDURAL HISTORY

A. The Underlying Malicious Prosecution Claim

Plaintiffs filed a malicious prosecution action against Ravet in 2003. Trial commenced in March 2007, and on April 2, 2007, resulted in a compensatory and punitive damages verdict in favor of plaintiffs against Ravet. Judgment for $383,654 was entered against Ravet on February 26, 2008.

B. The Operative Complaint

Plaintiffs' operative complaint alleges a single cause of action involving allegations of fraudulent conveyance, conspiracy to engage in fraudulent conveyance, and aiding and abetting in fraudulent conveyance. In the body of the complaint, plaintiffs include allegations against the following defendants: Ravet, the Children's Trust, the Separate Property Trust, Shirley, Emanuel,[5] the Ravet Family Trust dated 10/25/02

---

[5] Emanuel passed away and plaintiffs proceeded against Emanuel's estate.

4

(Ravet Family Trust),[6] Brandon Ravet (Brandon), Stephen Ravet (Stephen),[7] and

Pearson. Although not clear in the body of the operative complaint, the caption indicates

that plaintiffs are suing Ravet individually and as trustee of the Children's Trust. The

complaint also includes allegations that the Children's Trust and the Separate Property

Trust are the alter egos of Ravet and that both trusts are mere shells that allow Ravet to

avoid his debts.

At trial, plaintiffs did not proceed against Ravet as the trustee of the Children's

Trust, but instead, tried the case against the Children's Trust itself. In addition, plaintiffs

did not ask the trial court or the jury to make any determination regarding the alter ego

allegations.

### C. Transactions Relating to Cottontail

#### 1. Ravet Family Transactions

Ravet had a romantic relationship with Deborah Ford. Ford owned Cottontail.

Ravet moved into the Cottontail house with Ford in late November 2004. He contributed

at least $500,000 to remodeling Cottontail, but was never put on record title with Ford.

After Ford and Ravet ended their relationship, Ford sold Cottontail to Ravet and

his parents for $3.395 million. Toward that purchase price, Ravet was credited with

---

[6] The Ravet Family Trust was a revocable trust settled by Emanuel and Shirley for their own benefit. Emanuel and Shirley were the settlors, beneficiaries, and cotrustees of this revocable trust during the transactions at issue here. Thus, the distinction among the Ravet Family Trust, Emanuel and Shirley as cotrustees of that trust, and Emanuel and Shirley as individuals does not matter for purposes of our analysis here. (Cf. *Galdjie v. Darwish* (2003) 113 Cal.App.4th 1331, 1349-1350 (*Galdjie*).)

[7] Brandon and Stephen are Ravet's sons.

$500,000 for funds paid for construction on the home. Shirley and Emanuel applied for a loan from a commercial lender, the proceeds of which, $2.5 million, were used to pay part of the purchase price.

The remainder of the purchase price (plus settlement costs) was paid with the senior Ravets' cash deposit of $445,000. Ravet and his parents received a deed to Cottontail from Ford recorded July 10, 2006. The commercial lender received a deed of trust encumbering the property to secure repayment of its $2.5 million loan.

On July 11, 2006, the three Ravets quitclaimed Cottontail to "Gary K. Ravet as trustee of the Gary K. Ravet Children's Trust dated January 4, 1998." The Children's Trust is an irrevocable trust established by Shirley and Emanuel with Ravet as trustee and Stephen and Brandon as the beneficiaries. There was no evidence that Ravet received any consideration for transferring his interest in Cottontail to the Children's Trust.

On July 25, 2006, Ravet as trustee of the Children's Trust encumbered the property with a deed of trust to the Ravet Family Trust securing $850,000. At the time, the Ravet Family Trust was a revocable trust of which Shirley and Emanuel were trustees and beneficiaries. Ravet explained the Ravet Family Trust transaction as documenting the Children's Trust's assumption of his personal liability to his parents, and his parents' $415,000 cash contribution to the purchase from Ford.[8]

On the same day, Ravet as trustee of the Children's Trust, encumbered Cottontail with two deeds of trust to his sons, Brandon and Stephen, each securing $50,000. When

---

[8]    At trial, evidence was presented that the Children's Trust contributed $30,000 of the $445,000 cash the senior Ravets provided to purchase Cottontail.

6

the Ravet Family transactions occurred in July 2006, plaintiffs' malicious prosecution trial against Ravet was set for July 28, 2006.

The Children's Trust made the loan payments for Cottontail from December 2006 to June 2008. Ravet, Brandon, and Stephen lived in the Cottontail home during this time.

### 2. *Pearson Transactions*

After the Ford buyout, Pearson and Ravet developed a romantic relationship and saw one another often, with Pearson sometimes spending the night at the Cottontail house but not living there. Pearson wrote and delivered several checks to Ravet and the Children's Trust, which were deposited in the account of the Children's Trust. The total amount of the checks was $254,750. Ravet as trustee of the Children's Trust granted Pearson a deed of trust (Pearson deed of trust) on Cottontail recorded April 11, 2007. The deed of trust recites it secures four separate promissory notes for a total amount of $230,000. Because Pearson is no longer an appellant in this action, we omit any further discussion of her interactions with Ravet or the Children's Trust.

### D. Cottontail's Value and Repayment of the Loans

The lawsuit giving rise to the primary judgment at issue in this case resulted in a judgment against Ravet in the amount of $381,480.24 entered on February 26, 2008. As such, plaintiffs could commence collection efforts on the 2008 judgment as of February 26, 2008. An abstract of judgment was recorded July 20, 2009. Up to the time of trial, plaintiffs' sole efforts to collect their judgment against Ravet consisted of recording the abstract, defending the judgment on appeal, and prosecuting the UFTA case.

7

Cottontail was appraised at a value of $4 million as of November 18, 2005.  Ford thought it was still worth more than the purchase price when she sold it, and others thought it was worth the $3.395 million purchase price.  Thus, the property's value exceeded the $2.5 million loan against it by $895,000 to $1.5 million.

As owner of Cottontail, Ravet gave an opinion Cottontail's value declined at least $1 million between the July 2006 purchase and the February 2008 judgment.  As of trial, in his opinion, Cottontail was worth less than the first priority loan.  The assessed value of Cottontail in 2009 was $2.5 million.

Ravet testified that the Children's Trust made several payments to Brandon, but failed to provide any documentation of the payments.  Ravet also claimed to have made about $100,000 in payments on the $850,000 note in favor of the Ravet Family Trust, but again, produced no documentation of the payments.[9]

## C.  Degalopa

Degalopa is a limited liability company created by Emanuel and Shirley in 1998 primarily as a real estate investment company.  Degalopa is named after the first two letters of the names of Emanuel and Shirley's four children.  Emanuel and Shirley were financially well off and generous with giving and/or loaning money to their children.  In

---

[9]     In his opening brief, Ravet claims that the Children's Trust paid $100,000 on the $850,000 note.  As support for this proposition, Ravet cites to trial exhibit 111, which purports to be proof of a wire transfer of $100,000.  Ravet, however, fails to indicate where this exhibit was discussed in the record or if the exhibit was entered into evidence.  Exhibit 111 is unclear if it actually indicates that the Children's Trust made a payment on the subject note.  We have no obligation to scour the record to find support for Ravet's arguments.  (See *Nous v. Cuba* (2004) 122 Cal.App.4th 1229, 1246.)

8

1998, Emanuel and Shirley gave all their children, including Ravet, a 10 percent interest in Degalopa.

In July 2006, Gary assigned his 10 percent interest to the Children's Trust. About a month later, in August 2006, Shirley and Emanuel gave all of their children an additional interest in Degalopa, including another 10 percent interest to Gary. This 10 percent interest was appraised for gift tax purposes at $332,800. In late 2007, Emanuel and Shirley, through the Ravet Family Trust, agreed to buy back the 20 percent interest in Degalopa they had given to Ravet. All parties apparently believed the Children's Trust owned the entire 20 percent of Degalopa that had been transferred to Ravet. The evidence at trial showed, however, that Ravet had never transferred his second gift of 10 percent in Degalopa to the Children's Trust, although he thought he had. Accordingly, Emanuel and Shirley believed, by the terms of the transaction, they were purchasing 20 percent of Degalopa from the Children's Trust for $665,600, the full appraised value of 20 percent. Instead of paying cash, the parties agreed the Children's Trust would get a credit of $665,600 towards the $850,000 Cottontail note it owed to the Ravet Family Trust.

## E.  The Trial

Plaintiffs filed their fraudulent conveyance action on September 24, 2009. Although their original complaint named several trusts themselves as defendants, the complaint was subsequently amended multiple times and named the trustees of the subject trusts as defendants.

9

After numerous challenges to the pleadings, the matter proceeded to trial. The jury was asked to complete a special verdict form consisting of seven questions concerning liability and one question related to punitive damages. Both the jury instructions and the special verdict did not refer to any trustees as defendants, but instead listed three different trusts as defendants. In answering the first seven questions of the special verdict form, the jury found that: (1) Ravet's transfer of his interest in Cottontail to the Children's Trust was a fraudulent conveyance and that the Children's Trust both aided and abetted Ravet and conspired with Ravet to make the fraudulent conveyance; (2) the encumbrance by the Children's Trust of Cottontail with the $850,000 deed of trust in favor of the Ravet Family Trust was a fraudulent conveyance and Ravet, the Children's Trust, Emanuel, and the Ravet Family Trust all aided and abetted the conveyance as well as conspired to make the conveyance; (3) the encumbrances of the Children's Trust of Cottontail with two $50,000 deeds of trust in favor of Brandon and Stephen respectively were fraudulent conveyances and Ravet and the Children's Trust both aided and abetted the conveyances and conspired to make the conveyances; (4) the encumbrance by the Children's Trust of Cottontail with the $230,000 deed of trust in favor of Pearson was a fraudulent conveyance and Ravet, the Children's Trust, and Pearson aided and abetted the conveyance and conspired to make the conveyance; (5) Ravet's and/or the Gary Ravet Separate Property Trust's transfer of the interest in Degalopa to the Children's Trust was a fraudulent conveyance and Ravet and the Children's Trust both aided and abetted the conveyance and conspired to make the conveyance; and (6) the Children's Trust's transfer of its interest in Degalopa to the Ravet Family Trust was a fraudulent conveyance and

10

Ravet, the Children's Trust, Shirley, Emanuel, and the Ravet Family Trust all aided and abetted the conveyance and conspired to make the conveyance. The jury found plaintiffs were damaged in the amount of $383,654 plus interest of $105 per day beginning February 26, 2008.

The jury also found that Ravet, the Children's Trust, Emanuel, the Ravet Family Trust, the Separate Property Trust, and Pearson acted with malice. After hearing additional evidence, the jury awarded punitive damages against Ravet and the Children's Trust in the amount of $500,000 and against Pearson in the amount of $250,000.

### F. Judgment and Postjudgment Motions

The court entered judgment incorporating the special verdict, but the judgment eliminated awards against the Children's Trust. Shirley, Emanuel's estate, the Ravet Family Trust, Ravet, and Pearson brought posttrial motions.

While the posttrial motions were pending, plaintiffs moved to amend the judgment nunc pro tunc based on clerical error. The ground for the motion was the court clerically erred in striking all relief against the Children's Trust. As determined at a prior ex parte hearing, only the phrase "Gary Ravet, as Trustee of the" should have been eliminated. The court granted the motion. Its order expressly memorialized a decision to enter judgment against the Children's Trust (i.e., as a named entity in its own right), not against Ravet as trustee of that trust. An amended judgment was entered providing for the relief against the Children's Trust awarded in the special verdict.

11

The court denied the various posttrial motions. On the same day, it conditionally granted Pearson's motion for a new trial unless plaintiffs accepted reduction of compensatory damages to $230,000. Plaintiffs consented to the reduction in damages.

The court subsequently entered an amended judgment, which restored awards against the Children's Trust and reduced the amount of damages against Pearson. In all other respects, the amended judgment was the same as the judgment the court previously entered.

Ravet timely appealed.

## DISCUSSION

### I

### *THE UFTA AND TRUSTS*

### A. The UFTA

The gravamen of plaintiffs' operative complaint was that the defendants violated the UFTA. "The UFTA was enacted in 1986; it is the most recent in a line of statutes dating to the reign of Queen Elizabeth I." (*Mejia v. Reed* (2003) 31 Cal.4th 657, 664 (*Mejia*).) The statute was "designed . . . for the protection of creditors." (*Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1873, italics omitted; accord *Mejia*, *supra*, at p. 668 ["The California Legislature has a general policy of protecting creditors from fraudulent transfers."].) The statute " 'is remedial and as such should be liberally construed.' " (*Cortez v. Vogt* (1997) 52 Cal.App.4th 917, 937 (*Cortez*).)

The UFTA "permits defrauded creditors to reach property in the hands of a transferee." (*Mejia*, *supra*, 31 Cal.4th at p. 663.) A fraudulent transfer under the UFTA

12

involves " ' "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." ' [Citation.]" (*Filip v. Bucurenciu* (2005) 129 Cal.App.4th 825, 829 (*Filip*).) The transferee "holds only an apparent title [to the transferred property], a mere cloak under which is hidden the hideous skeleton of deceit, the real owner being the scheming and shifty judgment debtor . . . ." (*Cortez*, *supra*, 52 Cal.App.4th at p. 936.)

"Under the Fraudulent Transfer Act (Civ. Code, §§ 3439-3439.12), a transfer of assets made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer (1) with an actual intent to hinder, delay or defraud any creditor, or (2) without receiving reasonably equivalent value in return, and either (a) was engaged in or about to engage in a business or transaction for which the debtor's assets were unreasonably small, or (b) intended to, or reasonably believed, or reasonably should have believed, that he or she would incur debts beyond his or her ability to pay as they became due." (*Monastra v. Konica Business Machines, U.S.A., Inc.* (1996) 43 Cal.App.4th 1628, 1635 (*Monastra*).)[10] A creditor seeking to set aside a transfer as fraudulent under section 3439.04 may satisfy either subdivision (a)(1) by showing actual intent, or subdivision (a)(2) by showing constructive fraud. (*Monastra*, *supra*, 43 Cal.App.4th at p. 1635; *Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1294; see *Reddy v. Gonzalez* (1992) 8 Cal.App.4th 118,

---

10 In 2004, after *Monastra, supra,* 43 Cal.App.4th 1628, the Legislature rewrote section 3439.04. The amendment changed the numbering and lettering, but not the wording, of what is now subdivision (a)(1) and (a)(2). (Stats. 2004, ch. 50, § 1, p. 204.)

13

122-123.) "Hence, subd[ivision] (a)[(1)] is independent of subd[ivision (a)(2)], and does not require proof of anything more than an actual intent to defraud." (2 Miller & Starr, Cal. Real Estate Digest 3d (2013) Fraudulent Conveyances and Transfers, § 5.) It is sufficient to demonstrate that the transfer was made with the " 'actual intent to hinder, delay, or defraud any creditor of the debtor.' (§ 3439.04, subd. (a)(1).)" (*Filip*, *supra*, 129 Cal.App.4th at p. 834.)

To the extent a transfer is voidable in an action by a creditor under the UFTA, the creditor may recover judgment for the value of the asset transferred[11] or the amount necessary to satisfy the creditor's claim, whichever is less. (§ 3439.08, subd. (b).) The UFTA allows a judgment to be entered against the first transferee of the asset, the person for whose benefit the transfer was made, and any subsequent transferee other than a good faith transferee who took for value or from any subsequent transferee. (§ 3439.08, subd. (b)(1) & (2).)

### B. The Fraudulent Transfers

The UFTA broadly and inclusively defines a "transfer" as follows: " 'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." (§ 3439.01, subd. (i).)

---

[11]     "If the judgment . . . is based upon the value of the asset transferred, the judgment shall be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require." (§ 3439.08, subd. (c).)

14

At trial, plaintiffs challenged seven transactions as fraudulent transfers: (1) the transfer of Cottontail from Ravet and his parents to the Children's Trust; (2) the encumbrance of Cottontail with a $850,000 lien secured by a deed of trust signed by Ravet as trustee of the Children's Trust in favor of the Ravet Family Trust; (3) the encumbrance of Cottontail with a $50,000 lien secured by a deed of trust signed by Ravet as trustee of the Children's Trust in favor of Stephen; (4) the encumbrance of Cottontail with a $50,000 lien secured by a deed of trust signed by Ravet as trustee of the Children's Trust in favor of Brandon; (5) the encumbrance of Cottontail with a $230,000 lien secured by a deed of trust signed by Ravet as trustee of the Children's Trust in favor of Pearson; (6) the transfer of an interest in Degalopa from Ravet to the Children's Trust; and (7) the transfer of an interest in Degalopa from the Children's Trust to the Ravet Family Trust.

### C. The Children's Trust as a Defendant

Ravet contends that the trial court erred in providing jury instructions and a special verdict form that named the Children's Trust as a defendant. Ravet further argues these errors were prejudicial because they "poisoned the entire case" and it is reasonably probable a different result might have been reached in the absence of those errors. At the heart of Ravet's argument is the principle that a trust may not be a party in a lawsuit. He is correct.

Our colleagues in the Third District recently noted:

> "In contrast to a corporation, which the law often deems a person, a
> trust is not a person but rather ' "a fiduciary relationship with respect
> to property." [Citations.]' [Citation.] 'Legal title to property owned

15

> by a trust is held by the trustee. . . . A trust . . . "is simply a collection of assets and liabilities." ' [Citation.] '[A]n ordinary express trust is not an entity separate from its trustees.' [Citation.] [¶] A trust itself cannot sue or be sued. [Citation.] 'As a general rule, the trustee is the real party in interest with standing to sue and defend on the trust's behalf. [Citations.]' [Citation.] 'A claim based on a contract entered into by a trustee in the trustee's representative capacity, . . . may be asserted against the trust by proceeding against the trustee in the trustee's representative capacity . . . .' [Citation.]" (*Portico*, *supra*, 202 Cal.App.4th at p. 473, italics omitted.)

Plaintiffs do not address Ravet's point that a trust cannot be sued. Instead, plaintiffs argue we should not reach the merits of this issue because Ravet invited the error. (See *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 (*Norgart*) [" 'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal."]; *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 950.) We agree with plaintiffs that Ravet "invited the error" as to the special verdict form.

The special verdict form given to the jury refers to the Children's Trust as a defendant. It asks the jury to determine if the Children's Trust aided and abetted and/or conspired to engage in certain fraudulent transfers. Ravet now claims this special verdict was improper because it lists the Children's Trust as a defendant. Ravet, however, committed the same mistake in his proposed special verdict. Ravet's proposed special verdict consisted of 56 pages and included over 200 questions. However, nowhere did it refer to the trustee of the Children's Trust as a defendant. It too focused on the trust not the trustee in asking the jury to decide if the conduct of the Children's Trust was a substantial factor in causing the harm to plaintiffs. As such, the special verdict provided

16

to the jury and the proposed special verdict Ravet offered suffered from the same defect: treating the Children's Trust as an entity capable of being sued. In other words, Ravet asked the trial court to make the very mistake he now challenges. Thus, he invited the error and is estopped from challenging it here. (*Norgart*, *supra*, 21 Cal.4th at p. 403.)

The jury instructions also indentified the Children's Trust as a defendant. There is nothing in the record that indicates Ravet objected to the naming of the Children's Trust as a defendant in the jury instructions. He does not argue that he did so. As such, we determine that he has forfeited this claim on appeal by failing to object to the jury instructions to the extent they named the Children's Trust as a defendant. (See *Sperber v. Robinson* (1994) 26 Cal.App.4th 736, 742-743.)

In an effort to refute plaintiffs' claim that he invited the error, Ravet contends that he and the Children's Trust argued and brought motions prior to trial and during trial asserting the Children's Trust was not a proper party and could not be liable for Ravet's debts. None of Ravet's citations to the record support his position. The pleadings and arguments do not contain the assertion Ravet advances here, namely the Children's Trust cannot be a defendant. The first instance in the record where he raises such an argument is after the jury found the Children's Trust liable when Ravet objected to the proposed judgment on special verdict.

Plaintiffs assert that the Children's Trust was "properly included in the Special Verdict and Final Amended Judgment." They, however, fail to provide any authority for their position. Our independent research uncovered none. To the contrary, it is abundantly clear under California law that "[a] judgment against a trust, rather than

17

against its trustees, is not enforceable." (*Portico*, *supra*, 202 Cal.App.4th at p. 476.) Nothing in this opinion should be read to alter this rule in any way. Thus, the judgment in its current form is unenforceable as to the Children's Trust.

On the record before us, we are puzzled why plaintiffs chose to proceed against the Children's Trust instead of the trustee of that trust. Although the Court of Appeal had not issued its opinion in *Portico*, *supra*, 202 Cal.App.4th 464 at the time this matter went to trial, there existed several cases indicating that a trust is not a proper defendant. (See *Presta v. Tepper* (2009) 179 Cal.App.4th 909, 914; *Estate of Bowles* (2008) 169 Cal.App.4th 684, 691; cf. *Galdjie*, *supra*, 113 Cal.App.4th at pp. 1343-1344; *Powers v. Ashton* (1975) 45 Cal.App.3d 783, 787.) Despite these cases, plaintiffs proceeded against the Children's Trust itself.

No party here offers a sufficient explanation why plaintiffs pursued this strategy. There is some reference in the record regarding the parties wanting to avoid confusing the jury if Ravet was a defendant as both an individual and in his capacity as the trustee of the Children's Trust. It appears all the parties agreed (at least tacitly) that the matter would proceed against the Children's Trust and not the trustee. However, the fact that all the parties in the underlying trial agreed to a special verdict and jury instruction identifying the Children's Trust as a defendant does not change the law. (Cf. *Portico*, *supra*, 202 Cal.App.4th at p. 476 [The arbitrator improperly made an award against a trust and the court noted that "[t]he arbitrator did not have the power to change the law."].)

18

Although Ravet has either invited the error or forfeited his claims as to the error of including the Children's Trust as a defendant and plaintiffs maintain the judgment is proper, we see little value in leaving the judgment in its current, unenforceable form as to the Children's Trust. Such a result would be unfair and a waste of judicial resources as well as the valuable time and effort of the jury. To this end, we requested supplemental briefing from the parties regarding whether we could modify the judgment to award damages against Ravet, as trustee of the Children's Trust, in place of the Children's Trust.

Ravet, on behalf of himself individually and as trustee of the Children's Trust, answered our question in the negative. Ravet's response, however, was conclusory and simply reiterated many of the points he made in his opening and reply briefs here.

Plaintiffs' supplemental letter brief was curious. Plaintiffs informed us that there was no need to modify the judgment because the superior court had already done so when it amended the judgment on April 11, 2012 (the second amended judgment).[12] Plaintiffs then faulted Ravet for failing to bring the second amended judgment to our attention because it was entered prior to Ravet filing his opening brief. Plaintiffs, however, conveniently gloss over the fact that their respondents' brief also was filed after the second amended judgment was entered, and they neglected to alert us to it as well.

Plaintiffs' omission is troubling for two reasons. First, the thrust of Ravet's appeal was that a judgment against a trust is improper and requires reversal. Plaintiffs merely argue that Ravet had invited the error or forfeited any objection to the error. Further,

[12]    Not surprisingly, Ravet appealed the second amended judgment. That matter is pending before us as case no. D064300.

19

plaintiffs maintain, without authority, that the judgment against the Children's Trust was proper. Nowhere in their respondents' brief did plaintiffs inform us that the judgment they claimed was proper had been amended to correct an error they represent to us did not exist.

Second, although plaintiffs were aware that Ravet had appealed a final judgment against Children's Trust, plaintiffs applied ex parte to the superior court to modify the very judgment that was on appeal. In other words, the superior court amended the judgment at *plaintiffs'* request while this appeal was pending.[13] With these two factors in mind, we struggle to comprehend why plaintiffs would not inform us of their efforts and the amendment prior to our request for supplemental briefing.

Although plaintiffs do not explain their failure to provide us with notice of the second amended judgment, they now request that we take judicial notice of it under Evidence Code sections 452, subdivision (d) and 459. We take judicial notice of the fact that the superior court entered a second amended judgment. In doing so, however, it is beyond dispute that the superior court lacked jurisdiction to amend the judgment because: (1) that judgment was already on appeal; and (2) the amendment addressed the crux of Ravet's instant appeal.

---

[13]     During oral argument, we asked plaintiffs' counsel for further explanation regarding the second amended judgment. Plaintiffs' counsel proved unable to provide any cogent answers.

Under Code of Civil Procedure section 916, subdivision (a),[14] " '[a]s a general rule, a duly perfected appeal divests the trial court of further jurisdiction in the cause except with respect to collateral matters [such as a motion for new trial].' [Citations.] After perfection of an appeal, the trial court 'may not vacate or amend a judgment or order valid on its face, or do any other act which would affect the rights of the parties or the condition of the subject matter.' [Citation.]" (*Laidlaw Waste Systems, Inc. v. Bay Cities Services, Inc.* (1996) 43 Cal.App.4th 630, 641, fn. omitted.) "The purpose of the rule depriving the trial court of jurisdiction in a case during a pending appeal is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it." (*Betz v. Pankow* (1993) 16 Cal.App.4th 931, 938.) In *People v. Johnson* (1992) 3 Cal.4th 1183, the Supreme Court stated: "[D]uring the pendency of an appeal, the trial court loses jurisdiction to do anything in connection with the cause that may affect the judgment, but retains certain powers over the parties and incidental aspects of the cause, such as procedural steps in connection with preparation and correction of the record." (*Id*. at p. 1257.) "The trial court's power to enforce, vacate or modify an appealed judgment or order is suspended while the appeal is pending." (*Elsea v. Saberi* (1992) 4 Cal.App.4th

---

14      Code of Civil Procedure section 916, subdivision (a) provides: "Except as provided in [Code of Civil Procedure] Sections 917.1 to 917.9, inclusive, and in [Code of Civil Procedure] Section 116.810, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

21

625, 629.)  "And any 'proceedings taken after the notice of appeal was filed are a nullity.' [Citations.]  This is true even if the subsequent proceedings cure any purported defect in the judgment or order appealed from.' [Citations.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 197-198 (*Varian*).)

Here, plaintiffs applied ex parte for the court to amend the judgment to address the primary issue raised in Ravet's instant appeal.  Clearly, plaintiffs sought to substantially alter the final judgment after that final judgment was appealed.  Thus, when the superior court acted on the application, it lacked jurisdiction to enter the second amended judgment.  (Cf. *Elsea v. Saberi*, *supra*, 4 Cal.App.4th at p. 629.)  And the second amended judgment therefore is void.  (*Varian*, *supra*, 35 Cal.4th at p. 198.)

Plaintiffs also contend in the alternative that we have the authority to modify the judgment if we "conclude that [we] must look only to some prior version of the judgment" other than the second amended judgment.  Although plaintiffs provide some authority to support their position, their analysis is superficial.  We thus address the issue with little guidance from any of the supplemental letter briefs filed.

"Whenever an appellate court may make a final determination of the rights of the parties from the record on appeal, it may, in order to avoid subjecting the parties to any further delay or expense, modify the judgment and affirm it, rather than remand for a new determination." (*Sagadin v. Ripper* (1985) 175 Cal.App.3d 1141, 1170.)  The record here is sufficiently definite to allow us to modify the judgment as it relates to the Children's Trust.

A trust can only act through its trustee. (Cf. *Galdjie*, *supra*, 113 Cal.App.4th. at pp. 1343-1345.) Here, the Children's Trust was an irrevocable trust. Ravet was the trustee and his sons, Brandon and Stephen, were the beneficiaries. There is no indication in the record that anyone but Ravet acted on behalf of the Children's Trust. Indeed, in his opening brief, Ravet concedes "[t]he Children's Trust could only act through him." In proving any action on behalf of the Children's Trust, plaintiffs offered evidence relating to Ravet's actions, in his role as trustee of the Children's Trust. For example, for all the transactions involving the Children's Trust, it was Ravet, as the trustee, who executed the required documents.[15]

We are not concerned by Ravet's argument that the failure to try this case against Ravet as trustee of the Children's Trust was prejudicial error because "[t]he proper distinction would undoubtedly have made the findings against [Ravet], as an individual, different." In support of his argument, Ravet contends, without sufficient legal or factual support, "[i]t is probable the result here would have been different if the correct entity that can be liable for the Children's Trust had been named as defendant and the jury so correctly instructed." We disagree.

---

[15]　It is apparent from the record that Ravet used the Children's Trust for his personal benefit. He lived in the Cottontail house that was an asset of the Children's Trust while the Children's Trust made loan payments. He apparently had the trust assume his debts when it gave a lien on Cottontail to the Ravet Family Trust. The operative complaint includes allegations that the Children's Trust was an alter ego of Ravet and/or the Children's Trust was a sham that allowed Ravet to avoid paying his debts. The record provided evidence to support this allegation, but neither the trial court nor the jury ever made any determination on this issue. We do not need to reach this issue to modify the judgment here.

It is abundantly clear that plaintiffs were attempting to prove, and did prove, at trial that the Children's Trust was involved in numerous fraudulent transfers. As Ravet admits, the Children's Trust can only act through him as its trustee. The evidence offered at trial to show the Children's Trust acted improperly consisted of Ravet's acts as trustee. Put differently, plaintiffs could only show the trust violated the UFTA through the acts of its trustee, Ravet. This same evidence shows Ravet, in his capacity as trustee of the Children's Trust, violated the UFTA. As such, we modify the judgment to replace the damages awarded against the Children's Trust with those same damages awarded against Ravet in his capacity as trustee of the Children's Trust.

We emphasize that neither Ravet in his individual capacity nor as trustee of the Children's Trust is prejudiced by this modification. We view this modification akin to amending a judgment to properly designate the real defendant. (See *Hall, Goodhue, Haisley & Baker, Inc. v. Marconi Conf. Center Bd.* (1996) 41 Cal.App.4th 1551, 1555 [a superior court may amend a judgment confirming an arbitration award to name the correct defendant]; see also *Carr v. Barnabey's Hotel Corp.* (1994) 23 Cal.App.4th 14, 21-22 ["Amendment of a judgment to add an alter ego 'is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. [Citations.] "Such a procedure is an appropriate and complete method by which to bind new . . . defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit." ' "].) Here, there is no distinction between the acts of the Children's Trust and the acts of Ravet in his

24

capacity of the trustee of that trust. They are one in the same, and the trust can only act through its trustee.[16] (Cf. *Galdjie, supra,* 113 Cal.App.4th. at pp. 1343-1345.)

In addition to modifying the judgment, we also order the superior court to strike the second amended judgment. While this may be unnecessary because the second amended judgment is void (*Varian*, *supra*, 35 Cal.4th at p. 198), we order the court to strike the second amended judgment to avoid any confusion that may arise from the modified judgment resulting from this opinion.

II

*JURY INSTRUCTIONS*

Ravet also contends he was prejudiced by a jury instruction that allowed the jury to find him liable as the transferee of his own debt. We disagree.

A. Background

At trial, the jury instructions were not reported. Instead, we refer to the instructions contained in the appellate appendix. Ravet takes issue with the instructions relating to fraudulent transfers (CACI Nos. 4200, 4201, 4202, & 4203).

As provided in the appellate appendix, the relevant instructions read as follows:

> "CACI 4200 [¶] Plaintiff's [sic] claim they were harmed because Gary Ravet fraudulently transferred property to one or more of the Defendants in order to avoid paying a debt to Plaintiffs. This is called 'actual fraud.' To establish this claim against any Defendants, Plaintiffs must prove all of the following: [¶] 1. That Plaintiffs have a right to payment from Gary Ravet; [¶] 2. That Gary Ravet

---

[16] There is no argument on the record before us that the Children's Trust acted independently from its trustee. And, in representing the rights of the Children's Trust, Ravet, as trustee of the Children's Trust, is a party to this appeal further alleviating any concern that our modification somehow prejudices the trustee.

25

transferred property to any of Defendants; [¶] 3. That Gary Ravet transferred the property with the intent to hinder, delay, or defraud one or more of his creditors; [¶] 4. That Plaintiff's [sic] were harmed; and [¶] 5. That Gary Ravet's conduct was a substantial factor in causing Plaintiffs' harm. [¶] To prove intent to hinder, delay, or defraud creditors, it is not necessary to show that Gary Ravet had a desire to harm his creditors. Plaintiffs need only show that Gary Ravet intended to remove or conceal assets to make it more difficult for his creditors to collect payment.

"CACI 4201 [¶] In determining whether Gary Ravet intended to hinder, delay, or defraud any creditors by transferring property/incurring an obligation to any of Defendants, you may consider, among other factors, the following: [¶] (a) Whether the transfer was to a relative, someone close to Mr. Ravet, or an entity controlled by him; [¶] (b) Whether Gary Ravet retained possession or control of the property after it was transferred; [¶] (c) Whether the transfer was disclosed or concealed; [¶] (d) Whether before the transfer was made Gary Ravet had been sued or threatened with suit; [¶] (e) Whether the transfer was of substantially all of Gary Ravet's assets; [¶] (f) Whether Gary Ravet fled; [¶] (g) Whether Gary Ravet removed or concealed assets; [¶] (h) Whether the value received by Gary Ravet was not reasonably equivalent to the value of the asset transferred; [¶] (i) Whether Gary Ravet was insolvent or became insolvent shortly after the transfer was made; [¶] (j) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred. [¶] Evidence of one or more factors does not automatically require a finding that any of Defendants acted with the intent to hinder, delay, or defraud creditors. The presence of one or more of these factors is evidence that may suggest the intent to delay, hinder, or defraud.

"CACI 4202 [¶] Plaintiffs claim they were harmed because Gary Ravet transferred property or incurred an obligation to some or all of the Defendants and, as a result, was unable to pay Plaintiffs money that was owed. This is called 'constructive fraud.' To establish this claim against any of the Defendants, Plaintiffs must prove all of the following: [¶] 1. That Plaintiffs had a right to payment from Gary Ravet; [¶] 2. That Gary Ravet transferred property or incurred an obligation to any of the Defendants; [¶] 3. That Gary Ravet did not receive a reasonably equivalent value in exchange for the transfer or obligation; [¶] 4. That Gary Ravet was in business or about to start a business or enter a transaction when his remaining assets were

26

unreasonably small for the business or transactions; or [¶] That Gary Ravet intended to incur debts beyond his ability to pay as they became due; or [¶] That Gary Ravet believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due; [¶] 5. That Plaintiffs was harmed; and [¶] 6. That Gary Ravet's conduct was a substantial factor in causing Plaintiffs' harm. [¶] If you decide that Plaintiffs have proved all of the above, they do not have to prove that Gary Ravet intended to defraud any creditors. [¶] It does not matter whether Plaintiffs' right to payment arose before or after Gary Ravet transferred property or incurred an obligation.

"CACI 4203 [¶] Plaintiffs claim they were harmed because Gary Ravet transferred property to one or more of Defendants and was unable to pay Plaintiffs money that was owed. This is called 'constructive fraud.' To establish this claim against any of Defendants, Plaintiffs must prove all of the following: [¶] 1. That Plaintiffs have a right to payment from Gary Ravet; [¶] 2. That Gary Ravet transferred property to any of Defendants; [¶] 3. That Gary Ravet did not receive a reasonably equivalent value in exchange for the transfer; [¶] 4. That Plaintiffs' right to payment from Gary Ravet arose before Gary Ravet transferred property; [¶] 5. That Gary Ravet was insolvent at that time or became insolvent as a result of the transfer or obligation; [¶] 6. That Plaintiffs were harmed; and [¶] 7. That Gary Ravet's conduct was a substantial factor in causing Plaintiffs' harm. [¶] If you decide that Plaintiffs have proved all of the above, they do not have to prove that Gary Ravet intended to defraud creditors."

The jury instructions also identified the following entities as defendants: "Gary Ravet, the Gary K. Ravet Children's Trust dated 1/4/88, the Gary K. Ravet Separate Property Trust, Shirley Ravet, the Estate of Emanuel Ravet, the Ravet Family Trust dated 10/25/02, Stephen Ravet, Brandon Ravet and Dorota Pearson."[17]

---

17     In the record, the Children's Trust is shown with the date January 4, 1998 and January 4, 1988. No party argues there were two different Children's Trust. The discrepancy appears to be a typographical error.

## B. Law

"A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' [Citation.]" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.) Thus, when the jury receives an improper instruction in a civil case, prejudice will generally be found only " '[w]here it seems probable that the jury's verdict may have been based on the erroneous instruction . . . .' " (*LeMons v. Regents of University of California* (1978) 21 Cal.3d 869, 875 (*LeMons*), quoting *Robinson v. Cable* (1961) 55 Cal.2d 425, 428.) That assessment, in turn, requires evaluation of several factors, including the evidence, counsel's arguments, the effect of other instructions, and any indication by the jury itself that it was misled. (*Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069-1070 (*Pool*).)

Instructional error in a civil case is prejudicial "where it seems probable" that the error "prejudicially affected the verdict." (See *Pool*, *supra*, 42 Cal.3d at p. 1069; *LeMons*, *supra*, 21 Cal.3d at p. 875.) Of course, that determination depends heavily on the particular nature of the error, including its natural and probable effect on a party's ability to place his full case before the jury.

But the analysis cannot stop there. Actual prejudice must be assessed in the context of the individual trial record. For this purpose, the multifactor test set forth in such cases as *LeMons, supra,* 21 Cal.3d 869 and *Pool*, *supra*, 42 Cal.3d 1051, is as pertinent in cases of instructional omission as in cases where instructions were erroneously given. Thus, when deciding whether an error of instructional omission was

28

prejudicial, the court must also evaluate (1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled.

When a trial court gives a jury instruction, which is correct as far as it goes but which is too general or is incomplete for the state of the evidence, a failure to request an additional or a qualifying instruction will waive a party's right to later complain on appeal about the instruction that was given. (*Mock v. Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306, 333-334 (*Mock*).)  However, when a trial court gives a jury instruction which is prejudicially erroneous as given, i.e., which is an incorrect statement of law, the party harmed by that instruction need not have objected to the instruction or proposed a correct instruction of his own in order to preserve the right to complain of the erroneous instruction on appeal. (*Ibid*.)  Thus, if the court's instructions prejudicially misstate the law, Ravet rightfully complains about them in this appeal. (*Suman v. BMW of North America, Inc.* (1994) 23 Cal.App.4th 1, 9.)

### C.  Analysis

Ravet contends the instructions regarding fraudulent transfer (CACI Nos. 4200-4203) misstate the law because they allowed the jury to find him liable as both the debtor and the transferee when he cannot be the transferee of his own debt.  In response, plaintiffs argue Ravet forfeited this argument by failing to object to the now challenged instructions because Ravet's contention actually hinges on the claim that the subject instructions are too general.  Plaintiffs have the better argument.

29

Ravet does not argue that the fraudulent transfer instructions incorrectly state the law as it relates to Ravet as the debtor and the other defendants as transferees. His complaint is that the instructions do not differentiate between Ravet and the other defendants, but instead, merely lump all the defendants together. In other words, the instructions were too general because they did not distinguish between defendants. Because Ravet did not object to these instructions at trial or ask for a clarifying instruction, he forfeited this claim on appeal. (*Mock*, *supra*, 4 Cal.App.4th at pp. 333-334.)

Moreover, even if we were to determine that the fraudulent transfer instructions misstated the law, Ravet failed to show he was prejudiced by the instructions. Ravet asserts the instructions allowed the jury to find him liable as both the debtor and transferee involving the same transfer. Otherwise stated, Ravet claims the jury could find him liable for transferring his assets to himself. This argument lacks merit for two reasons.

First, if the jury found that Ravet had transferred his assets to himself, putting aside whether this would actually constitute a transfer, it could not have found him liable for a fraudulent transfer. A fraudulent transfer under the UFTA involves " ' "a transfer by the debtor of property to a third person undertaken with the intent to prevent a creditor from reaching that interest to satisfy its claim." ' [Citation.]" (*Filip*, *supra*, 129 Cal.App.4th at p. 829.) Thus, if the jury believed Ravet was both the transferor and transferee of the same asset, Ravet fails to explain how the jury would have found this "transfer" prevented plaintiffs from reaching the asset to satisfy their claim. In short,

30

Ravet would still possess the asset and would have that asset to pay his creditors. There would have been no fraudulent transfer. The jury was instructed as such, specifically that a fraudulent transfer can only occur if the debtor (Ravet) transferred his property to "any of the Defendants" *and* was unable to pay plaintiffs. (See CACI Nos. 4202, 4203.) "The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions." (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.) Here, the instructions would not have allowed the jury to find Ravet liable as both the debtor/transferor and the transferee. If he had transferred an asset to himself, that asset would remain available to creditors. As such, Ravet would not be unable to pay plaintiffs based on the "transfer" of the asset to himself. A jury therefore could not find liability under the UFTA if Ravet was both the debtor and the transferee.

Second, Ravet's argument fails because there is no indication in the record that the jury actually found that Ravet was both the debtor who transferred the asset and the transferee who received that asset. Ravet provides no citation to the record to support his position. Further, the special verdict form provided to the jury did not ask them if Ravet transferred either Cottontail or Degalopa to himself. Accordingly, Ravet's contention is without merit for this reason as well.

## III

### *EVIDENTIARY ISSUES*

Generally, we review the trial court's rulings regarding the admissibility of evidence under the deferential abuse of discretion standard. (*City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 900.) "[T]he appropriate test of abuse of discretion is

31

whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered." (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598.) We will disturb discretionary trial court rulings only upon a showing of a clear case of abuse and a miscarriage of justice. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)

Ravet challenges the trial court's exclusion of evidence that plaintiffs' original claim against him was only $867. We determine there is no merit in Ravet's challenge.

The $867 claim arose from an August 23, 2002 order awarding plaintiffs costs in a lawsuit brought by Ravet against plaintiffs regarding health club membership fees.[18] Ravet argues it was prejudicial error for the trial court not to allow him to produce evidence of the $867 claim because it is relevant to show his lack of motivation to engage in fraudulent transfers to avoid paying such a meager claim. He also contends if the jury heard about the $867 claim, it would not have awarded $500,000 in punitive damages "merely for avoiding an $867 debt."

In response, plaintiffs point out that the $867 claim was reduced to a judgment, which then served as the basis for the subsequent malicious prosecution action filed by plaintiffs against Ravet in October 2003. Plaintiffs further assert that it would have been error to allow Ravet to reargue the nature and value of the underlying claim after a jury found in their favor in the malicious prosecution action and this court affirmed that judgment. Although plaintiffs are incorrect that the $867 claim was reduced to a judgment, overall, they have the better argument.

---

[18] Additional background information regarding the $867 claim can be found in our unpublished opinion *Personalized Workout of La Jolla, Inc. v. Ravet* (Nov. 25, 2011, D051315, D052586).

32

Here, the trial court made the sound decision that the parties could not discuss the details of $867 claim (including the amount) as well as the details of the malicious prosecution action. Although neither Ravet nor plaintiffs indicate any part of the record explaining the trial court's reasoning, we agree with plaintiffs that the trial court properly exercised its discretion under Evidence Code section 352[19] to prevent the parties from relitigating issues already decided in a previous case, especially when these issues might have inflamed the jury here and wasted considerable trial time on issues that had already been decided. In sum, on the record before us, we cannot say the trial court acted in an arbitrary, capricious, or patently absurd manner in excluding evidence of the $867 claim. (See *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1419.) The trial court did not abuse its discretion.[20]

V

*PUNITIVE DAMAGES*

Ravet challenges the amount of punitive damages the jury awarded against him. He claims the punitive damages awarded against him are excessive as a matter of law. We disagree.

---

[19] Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[20] In addition, the trial court ruled that the $867 cost award could not be an element of damages for the jury to consider because it was never reduced to a judgment.

33

The jury awarded $500,000 of punitive damages against Ravet. Ravet argues the punitive damages are excessive because the jury did not award any compensatory damages against him. In response, plaintiffs contend Ravet agreed that compensatory damages were unnecessary to support a punitive damages award and punitive damages awarded here could be based on the damages against Ravet in the underlying malicious prosecution action. During oral argument, plaintiffs' counsel, however, clarified plaintiffs' position on this issue. Counsel maintained that the jury did award compensatory damages against Ravet, but, based on an agreement between the parties, the court did not include the compensatory damages against Ravet in the judgment to avoid a "double recovery." We asked for supplemental briefing on this issue to indicate where in the record the parties agreed there would be no judgment against Ravet for compensatory damages and to address the impact of that agreement on the award of punitive damages in light of relevant case law.

In their supplemental letter brief, plaintiffs emphasize that the jury did indeed award compensatory damages against Ravet. We agree. The special verdict form does not explicitly award damages against any specific defendant, but instead, allows the jury to indicate which defendant is liable for certain conduct and then includes a total amount of damages attributable to the conduct. The jury found Ravet liable for aiding and abetting and conspiring to make a fraudulent conveyance in encumbering Cottontail with the $850,000 deed of trust in favor of the Ravet Family Trust, the $50,000 deed of trust in favor of Brandon, the $50,000 deed of trust in favor of Stephen, and the $230,000 deed of trust in favor of Pearson. The jury also found Ravet liable for aiding and abetting as well

34

as conspiring to make a fraudulent transfer in connection with Ravet's interest in Degalopa. For each of these fraudulent transfers, the jury found that the plaintiffs were damaged in the amount of $383,654 plus interest of $105 per day beginning February 26, 2008.

However, the trial court did not award plaintiffs compensatory damages against Ravet in the judgment because it wanted to avoid a double recovery against Ravet. In discussing the form of the special verdict, the parties and trial court agreed that a finding of aiding and abetting would make any damages awarded joint and several as to all those defendants. And following trial, counsel for the Children's Trust asked the trial court not to enter judgment against Ravet for compensatory damages because any such award would be "duplicative" of the malicious prosecution judgment. Ravet argued that this issue was raised at the beginning of trial. The trial court stressed that it did not want to have two judgments against Ravet for the same amount. Thus, it stated that the judgment should only include costs and punitive damages as to Ravet. Plaintiffs acquiesced.

In response to plaintiffs' supplemental brief on the punitive damages issue, Ravet repeats his argument that the jury did not award compensatory damages against him, and thus, punitive damages are not proper. The record does not support Ravet's position. Instead, it is clear the jury included Ravet with other defendants who had damaged plaintiffs in the various fraudulent transactions. The trial court, however, did not award any compensatory damages against Ravet in the judgment. At that time, Ravet agreed with the court that it would be improper for the compensatory damages to be awarded against him. We find it significant that neither Ravet nor any other defendant argued that

35

punitive damages would be improper because the jury did not award compensatory damages against Ravet in the first instance. Instead, the crux of the argument was to omit any award of compensatory damages against Ravet to avoid double recovery.

Ravet also stresses that the parties never entered into any agreement regarding compensatory damages as to him. He points out that plaintiffs argued before, during, and after trial that compensatory damages should be awarded against Ravet. We agree that plaintiffs attempted to convince the trial court that compensatory damages were appropriate against Ravet. However, in the end, plaintiffs relented when the court explained it believed two judgments in the same amount against Ravet would be inappropriate, but still believed that it could award punitive damages. Although we agree with Ravet that the record does not disclose that plaintiffs entered into an agreement with him that compensatory damages should not be awarded, we determine the lack of an agreement inconsequential to our analysis. The facts remain that the jury awarded compensatory damages against all defendants it found liable, and the trial court did not award compensatory damages against Ravet to avoid a double recovery.

With these facts in mind, we evaluate the award of punitive damages against Ravet in light of existing case law. It is well established that "[i]n California, as at common law, actual damages are an absolute predicate for an award of exemplary or punitive damages." (*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 147.) This rule has been interpreted to mean that "[a]n award of actual damages, even if nominal, is required to recover punitive damages." (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 238.)

36

Other cases have clarified, however, that "an actual award of compensatory damages is not necessary; rather the plaintiff need only prove that he or she suffered damages or injury." (*Gagnon v. Continental Casualty Co.* (1989) 211 Cal.App.3d 1598, 1603, fn. 5, italics omitted.) Thus, an award of punitive damages may be upheld where the plaintiff does not recover a compensatory damage award but is awarded "its equivalent, such as restitution [citation], an offset [citation], damages conclusively presumed by law [citations], or nominal damages [citation]." (*Cheung v. Daley* (1995) 35 Cal.App.4th 1673, 1677-1678, fn. 8 (*Cheung*); see also *Douglas v. Ostermeier* (1991) 1 Cal.App.4th 729, 750, fn. 3.)

In his supplemental letter brief, Ravet also contends that the holding of *Cheung*, *supra*, 35 Cal.App.4th 1673 supports his position that the punitive damages award against him is improper. In *Cheung*, the court addressed the question "whether a jury can award exemplary damages when it has expressly determined that the plaintiffs were entitled to '0.00' compensatory damages." It answered the question in the negative. (*Id*. at p. 1674.) In reaching this conclusion, the court relied on the Supreme Court's opinion in *Mother Cobb's Chicken T., Inc. v. Fox* (1937) 10 Cal.2d 203. There, the Supreme Court stated: " 'The foundation for the recovery of punitive or exemplary damages rests upon the fact that substantial damages have been sustained by the plaintiff. Punitive damages are not given as a matter of right, nor can they be made the basis of recovery independent of a showing which would entitle the plaintiff to an award of actual damages. Actual damages must be found as a predicate for exemplary damages.' . . . [¶] . . . [T]he rule applicable is, as declared frequently, that punitive damages are never more than an

37

incident to a cause of action for actual damages. . . . [¶] . . . Evil thoughts or acts, barren of result, are not the subject of exemplary damages.' " (*Id*. at pp. 205-206; *Cheung*, *supra*, 35 Cal.App.4th at p. 1675.)

The court in *Cheung* noted that since the Supreme Court's opinion in *Mother Cobb's Chicken T., Inc. v. Fox, supra,* 10 Cal.2d 203, Courts of Appeal have upheld punitive damages in the absence of compensatory damages as long as the record showed that the defendant tortiously harmed the plaintiff. (*Cheung*, *supra*, 35 Cal.App.4th at pp. 1675-1676.) But our high court has more recently affirmed that "actual damages are an absolute predicate for an award of exemplary or punitive damages." (*Kizer v. County of San Mateo*, *supra*, 53 Cal.3d at p. 147; accord, *Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 1004.) Based on these opinions, the court in *Cheung* "conclude[d] that the rule of *Mother Cobb's Chicken*--that an award of exemplary damages must be accompanied by an award of compensatory damages--is still sound. That rule cannot be deemed satisfied where the jury has made an express determination not to award compensatory damages." (*Cheung*, *supra*, at p. 1677, fn. omitted.)

*Cheung*, *supra*, 35 Cal.App.4th 1673 is distinguishable from the instant matter. The plaintiffs in *Cheung* sued a defendant for a fraudulent transfer. In *Cheung*, the plaintiffs had obtained a judgment against Ron Daley in the amount of $59,000 consisting of both compensatory and punitive damages in an underlying nuisance suit. They then sued Daley and his mother under the UFTA. (*Id*. at p. 1674.) The jury did not award the plaintiffs any compensatory damages, but awarded them $92,000 in punitive damages. The Court of Appeal reversed the trial court's judgment, concluding that punitive

38

damages must be accompanied by "an express award of compensatory damages." (*Id*. at p. 1677.)

Here, plaintiffs obtained a money judgment against Ravet in the underlying malicious prosecution action consisting of both compensatory and punitive damages. In the UFTA action, no compensatory damages were awarded against Ravet in the judgment. However, unlike the jury in *Cheung*, *supra*, 35 Cal.App.4th 1673, the jury here did find that Ravet was liable, jointly and severally with other defendants, in the amount of $383,654 plus interest. Thus, the jury did award plaintiffs compensatory damages against Ravet. However, to avoid confusion and/or a double recovery against Ravet (the damages from the underlying malicious prosecution action and the fraudulent transfer action were the same amount), the trial court omitted any compensatory damages against Ravet in the judgment.

In summary, the jury in *Cheung, supra*, 35 Cal.App.4th 1673 explicitly found that the plaintiffs were not entitled to any compensatory damages, and thus, the judgment did not include any compensatory damages. Here, the jury found Ravet liable for compensatory damages, yet the trial court did not include the compensatory damages in the judgment, not because it believed the jury's verdict was not supported by the evidence, but because it did not want the judgment to provide for a "double recovery" for plaintiffs. Under these circumstances, we find no compelling reason that Ravet should be immune from punitive damages merely because the court fashioned the judgment to avoid confusion and prevent a double recovery. Both objectives were for Ravet's benefit. Further, on the record before us, it is clear that Ravet was the mastermind behind the

39

numerous fraudulent transfers and is deserving of punitive damages for his fraudulent acts.[21]  (See § 3294, subd. (a).)

VII

*JUROR MISCONDUCT*

Ravet claims the court erred in denying a motion for new trial because of juror misconduct.  Without any citation to the record to support this claim, Ravet baldly asserts misconduct exists as well as a presumption of prejudice.  (See *Banada Trading Co., Inc. v. Quality Infusion Care, Inc.* (2008) 164 Cal.App.4th 1440, 1445.)  We are not persuaded.

Ravet claims a juror failed to disclose a relationship during voir dire with a listed witness in the case who was not called at trial, but mentioned several times during trial.  Specifically, the subject juror (an attorney) had worked with a potential witness on a

---

[21]     For the first time during this appeal, in his supplemental letter brief, Ravet raises the contention that punitive damages are not available under the UFTA as a matter of law.  Generally, we will consider only the points raised in the trial court.  (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 [arguments raised for the first time on appeal are deemed forfeited].)  Although this court can use its discretion to consider an argument for the first time on appeal, the argument must involve a pure question of law determinable from uncontroverted facts.  (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1141.)  Here, Ravet raises a question of law.  However, we note that Ravet failed to raise this issue with the trial court by way of a dispositive motion attacking the complaint or a motion in limine prior to trial.  He did not raise this issue in his opening brief or reply brief.  He did not discuss this issue at oral argument.  He only raises the issue in his second supplemental letter brief, which was submitted in response to plaintiffs' supplemental letter brief and after oral argument.  Also, Ravet's argument that punitive damages are not permitted under the UFTA is not directly responsive to the three questions we requested the letter brief to address or any of the arguments raised in plaintiffs' supplemental brief.  Under these circumstances, we decline to exercise our discretion, and we deem Ravet's new argument forfeited.  (See *City of Scotts Valley v. County of Santa Cruz* (2011) 201 Cal.App.4th 1, 29.)

previous appeal. The potential witness was Mary Lehman, one of Ravet's attorneys on this appeal. It is this relationship that Ravet contends the juror did not disclose and constitutes the misconduct.

The juror's statements, or lack thereof, during voir dire form the basis of Ravet's argument. However, voir dire was not recorded; thus, there is nothing in the record that shows what the juror actually said. An appellant has the burden to provide an adequate record and affirmatively show reversible error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Further, it is the appellant's duty to support arguments in his or her briefs by references to the record on appeal, including citations to specific pages in the record. (*Duarte v. Chino Community* Hospital (1999) 72 Cal.App.4th 849, 856.) Here, without a record of voir dire, we have no basis to determine what the juror actually said or if any misconduct occurred.

In addition, when Ravet brought the possibility of juror misconduct to the trial court's attention (after the jury had already returned its verdict of liability), the court questioned the subject juror and allowed the attorneys to question him as well. The juror stated that he disclosed during voir dire that he had worked on an appellate matter with Lehman. He stated he had met Lehman, but characterized their relationship as "superficial" and "purely a professional relationship." The trial court, based on the juror's statements, stated the relationship between the juror and Lehman "sound[ed] like it was professional and minimal." None of the attorneys could recall if the juror had mentioned Lehman during voir dire.

In summary, there is nothing in the record that leads us to believe there was any misconduct. The trial court did not err in denying the motion for new trial based on jury misconduct.

DISPOSITION

The judgment is modified to substitute "Gary Ravet, as trustee of the Children's Trust," in place of the Children's Trust so that the judgment awards compensatory and punitive damages against Ravet in his capacity as trustee of the Children's Trust instead of against the Children's Trust itself. In all other respects, the judgment is affirmed. In addition, the second amended judgment is void, and we order the superior court to strike the second amended judgment to avoid confusion in connection with the modified judgment in this matter.

Plaintiffs are awarded their costs for this appeal.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


HALLER, J.


42